UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EMA FINANCIAL, LLC, a Delaware Limited    :   Case No. 20-cv-08781-ALC-GWG
Liability Company,                        :

                              :

              Plaintiff,         :

                              :

    - against -                 :

                              :

TPT GLOBAL TECH, INC.., a Florida Corporation,   :

                              :

           Defendant.       :

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
<u>DISMISS DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES</u>**

Dated: New York, New York
      January 5, 2021

                    LAW OFFICE OF JEFFREY FLEISCHMANN PC

                    By: <u>/s/ Jeffrey Fleischmann</u>
                         Jeffrey Fleischmann, Esq.
                    *Attorneys for EMA Financial, LLC*

                    150 Broadway, Suite 900
                    New York, New York  10038
                    Tel. (646) 657-9623
                    Fax (646) 351-0694
                    jf@lawjf.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................... 1-2

STATEMENT OF FACTS........................................................................ 2-6

    The Complaint ............................................................................ 2-6

    The Counterclaims ........................................................................ 6

ARGUMENT ................................................................................ 6-19

    I.    THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR
        ENTIRETY ........................................................................ 6-17

        A.  The Causes of Action for Securities Fraud Fails .................. 6-13

            (i)  Defendant's First Counterclaim for Securities Fraud Is a
                Poorly Disguised Breach of Contract Claim .............. 6-7

            (ii)  Defendant's First Counterclaim Must Be Dismissed Because
                Section 15(a)(1) Does Not Provide For A Private Right of
                Action........................................................ 7

            (iii)The First Counterclaim for Securities Fraud Also Fails
                Because EMA Is Not Required to Register as
                Broker-Dealer ........................................... 8-11

            (iv)The Securities Fraud Claim Fails To Comply With Rule 9(b)
                Or Properly To Plead Causation, Scienter, or Damages
                .......................................................... 11-13

        B.  The Counterclaim For a Declaratory Judgment Fails.......... 13-16

            (i)  Declaratory Judgment Is Not an Independent Cause of
                Action..................................................... 13-14

            (ii) Unconscionability Is An Affirmative Defense, Not a Cause
                of Action ................................................... 14

            (iii)The Counterclaim For A Declaratory Judgment Is Not
                Cognizable Because Defendant Fails Properly To Plead
                and Cannot Demonstrate That The Terms of the Relevant
                Agreements Are Commercially Unreasonable ........ 14-16

        C.  The Counterclaim For Unjust Enrichment Is Barred........... 16-17

        D.  The Fourth Counterclaim For Attorneys' Fees Is Baseless ...... 17

    II.   THE AFFIRMATIVE DEFENSES SHOULD BE DISMISSED IN THEIR
        ENTIRETY .................................................................... 17-19

CONCLUSION ............................................................................ 19

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfandary v. Nikko Asset Mgt., Co*., 2019 U.S. Dist. LEXIS 169524, at *17 (S.D.N.Y. Sep. 30, 2019) .................................................................................................................................. 7

*Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 529 N.Y.S.2d 279, 281 (1st Dep't 1988).................................................................................................................................. 14

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ........................................... 12

*Aspex Eyewear, Inc. v Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) .......... 19

*Baesa Securities Litigation*, 969 F. Supp. 238, 242 (S.D.N.Y. 1997) ......................................... 11

*Baum v. Phillips, Appel & Walden, Inc*., 648 F. Supp. 1518, 1529 (S.D.N.Y. 1986) ................... 7

*Bayerische Hypo-Und Vereinsbank AG v. AIG Matched Funding Corp*., 2010 U.S. Dist. LEXIS 18124, 2010 WL 692873, at *1 (S.D.N.Y. Mar. 1, 2010)........................................................ 13

*Beck v. Manufacturers Hanover Trust Co*., 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005, 98 L. Ed. 2d 650, 108 S. Ct. 698 (1988) .......................................................... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) 12

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F. 3d 195, 207 (3d Cir. 2006) ....................................... 10

*Capital Funding, LLC v. ExeLED Holdings, Inc.*, *supra, 2018* U.S. Dist. LEXIS 202540, at *5 11

*Caronia v.  Philip Morris USA*, Inc., 715 F.3d 417,438 (2d Cir. 2013) ....................................... 13

*Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 303, 690 N.Y.S.2d 489, 493 (1999).................. 16, 17

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) ..................................................... 13

*Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 145 (N.D.N.Y. 2002) ................................ 15

*Colonial Funding Network, Inc. v. Epazz, Inc*., 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017)....... 14

*Drexel Burnham Lambert Inc. v. Saxony Heights Realty Assocs.,* 777 F. Supp. 228, 235 (S.D.N.Y. 1991) ....................................................................................................................... 7

*EMA Fin. v 5Barz Intl.*, 2019 U.S. Dist. LEXIS 230418, at *19 (S.D.N.Y. Sep. 18, 2019) ........ 15

*EMA Fin., LLC v AIM Exploration, Inc*., 2019 U.S. Dist .LEXIS 26141, at *23 (S.D..NY. Feb.

19, 2019)..................................................................................................................... 18

*EMA Financial, LLC v. Vystar Corp.*, 2020 U.S. Dist. LEXIS 149778, *9-10 (S.D.N.Y. Aug. 18, 2020)................................................................................................................. 7, 10

*Goodman v. Shearson Lehman Bros., Inc.*, 698 F. Supp. 1078, 1083 (S.D.N.Y. 1988)................. 7

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014)............................... 12

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 776 (2d Cir. 1991)................................................... 7

*Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2012 U.S. Dist. LEXIS 125341, *12-13 (S.D.N.Y. Sep. 4, 2012).................................................................................................. 16, 17

*LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540, at *15-16 (S.D.N.Y. Sep. 28, 2018) ..................................................................................... 8

*LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist. LEXIS 126991, at *38 (E.D.N.Y. July 29, 2019)..................................................................................................... 15

*Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).................................................................. 12

*Ohio Players, Inc. v. Polygram Records, Inc.*, 2000 U.S. Dist. LEXIS 15710, at *4 (S.D.N.Y. Oct. 27, 2000)...................................................................................................... 16

*Ray v. Samsung Electronics America*, Inc., 2016 U.S. Dist. LEXIS 79260, *26 (June 17, 2016) 13

S*CM Grp., Inc. v. McKinsey & Co., Inc.*, 2011 U.S. Dist. LEXIS 31972, 2011 WL 1197523, at *7-8 (S.D.N.Y. March 28, 2011)................................................................................. 17

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ....................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007).................. 12

*Tulger Contracting Corp. v. Star Bldg. Sys.*, Inc., 2002 U.S. Dist. LEXIS 8620, 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) .................................................................................. 15

*Turner Constr. Co. v. Kemper Ins. Co.*, 198 Fed. Appx. at 30, 2006 U.S. Dist. LEXIS 8489, at *4 ..................................................................................................................... 16

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir.) (en banc)), *cert. denied*, 493 U.S. 811, 107 L. Ed. 2d 24, 110 S. Ct. 56 (1989) ................................................................................... 12

*Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977)................................................................. 13

**Statutes**

15 U.S.C §78c(a)(5)(A) ................................................................................................ 9

15 U.S.C. § 78o(a)(1) ............................................................................................. 8, 17

28 U.S.C. §2201 ......................................................................................................... 13

Section 15(a)(1) ........................................................................................... 1, 7, 8, 9, 17

Section 15(A)(1) ........................................................................................................... 6

Section 3(a)(5)(A) ......................................................................................................... 8

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................... 11

Fed. R. Civ. P. R. 9(b) ............................................................................................... 11

Fed.R.Civ.P. 8(a) ....................................................................................................... 19

Rule 10b-5 .................................................................................................................. 12

Rule 12(b)(6) ................................................................................................................ 1

Rule 144 .................................................................................................................... 1, 4

Rule 9(b) ....................................................................................................................... 1

**Other Authorities**

*National Council of Savings and Loans,* SEC No-Action Letter, 1986 SEC No-Act LEXIS 2609
    (July 27, 1986) at 4................................................................................................ 8

Plaintiff EMA Financial, LLC ("plaintiff" or "EMA"), respectfully submits this memorandum of law in support of its motion to dismiss the counterclaims and affirmative defenses asserted by defendant TPT Global Tech, Inc. ("defendant" or "TPT") pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is an action arising as the result of defendant's conduct in connection with certain agreements to purchase securities and related convertible note agreements. Among other things, after entering into negotiated, arms-length agreements, TPT refused to honor plaintiff's notices of conversion, which directed that TPT convert the outstanding note into shares upon due and proper demand. In addition, as alleged in the complaint, TPT failed to establish and increase the share reserve as required by the parties' agreement(s), failed to register EMA's shares and failed to become Rule 144 eligible.

In an effort to delay the entry of judgment, defendant filed counterclaims that were thereafter amended, all of which are meritless and dismissible on their face. The first counterclaim[1] under Section 15 of the Securities and Exchange Act alleges securities fraud, but the requisite elements are not sufficiently alleged. Regardless, it is well established that there is no private right of action under Section 15(a)(1). The dismissal of the first counterclaim, therefore, is mandated.

Defendant also advances counterclaim seeking a declaratory judgment that the relevant agreements between the parties are invalid under the guise that the contract documents are "unconscionable and oppressive." However, neither of these assertions nor any other allegations

---

[1] The counterclaims are improperly denominated as the first, second, third, and fourth "claims for relief." To avoid confusion, defendant's "claims for relief" will be referred to herein as "counterclaims."

purportedly in support of declaratory relief articulates any cognizable claim.  Not only is a declaratory judgment action unnecessary and inappropriate where, as here, the pleader has an adequate, alternative remedy, but, as a matter of law, a request for declaratory relief is procedural only such that it does not create an independent cause of action.

The third counterclaim claim for unjust enrichment is precluded given the indisputable fact that the parties' relationship is contractual and the fourth counterclaim for attorneys' fees must be dismissed because the relevant contract does not provide for the award of attorneys' fees to defendant under any circumstance.  The fact that plaintiff is contractually entitled to an award of its attorneys' fees is irrelevant.  Plaintiff undertook the risk of lending significant monies to defendant and defendant was free to walk away and find another lender.  Having agreed to all contractual terms, they cannot now be heard to complain that certain provisions were "one sided."

Finally, as set forth more fully herein, the affirmative defenses should all be dismissed.

Accordingly, EMA is entitled to an order dismissing in their entirety with prejudice defendant's counterclaims and affirmative defenses.

## STATEMENT OF FACTS

The facts of this matter have been fully set forth in the complaint (*See* Docket No. 1) and in defendant's amended counterclaims (*See* Docket No. 11).  For the purposes of this motion only, defendant's allegations in connection with its amended counterclaims (the "counterclaims") are accepted as true.

## The Complaint

On or about June 11, 2019, after arm's-length negotiations, TPT executed a Securities Purchase Agreement (the "SPA") and issued a Convertible Note to EMA (the "Note") in the

amount of $250,000.  (Complaint, ¶13).  Although the face value of the Note is $250,000, as set

forth in the Note, defendant received the sum of $235,000.00 in total proceeds.  A true and

correct copy of the Note is attached to the Declaration of Jeffrey Fleischmann ("Fleischmann

Dec.") as <u>Exhibit A</u>.   A true and correct copy of the SPA is annexed to the Fleischmann Dec. as

<u>Exhibit B</u>.

Page 1 of the Note provides that the Company must repay the unpaid interest and

principal balance of the Note by June 11, 2020.  Section 1.1 of the Note provides that EMA, at

any time after the Issue Date of the Note, has the right to convert all or part of the Note into

shares of TPT common stock (the "Common Stock").  Likewise, 1.4(a) of the Note provides that:

"Subject to Section 1.1, this Note may be converted by the Holder in whole or in part at any time

and from time to time after the Issue Date, by submitting to the Borrower a Notice of

Conversion…"  Further, under §1.4(d) of the Note: "Upon receipt by the Borrower from the

Holder of a facsimile transmission or e-mail (or other reasonable means of communication) of a

Notice of Conversion …the Borrower shall issue and deliver or cause to be issued and delivered

to or upon the order of the Holder certificates for the Common Stock issuable upon such

conversion within one business day after such receipt..."

In order to ensure that sufficient shares would be available for conversion, §1.3 of the

Note provides that the Borrower "will at all times while this Note is outstanding reserve from its

authorized and unissued Common Stock a sufficient number of shares, free from preemptive

rights, to provide for the issuance of Common Stock upon the full conversion or adjustment of

this Note."  Section 5 of the Note set forth defendants' obligations required to be satisfied in

order to ensure that EMA, at all times, had shares reserved.  Further, §4(e) of the SPA requires

that the Company maintain its listing on the OTC Markets and remain current in its reporting

obligations.  Moreover, Section 3.19 of the Note provides for consequences in the event that defendant failed to file a registration statement covering the Holder's resale at prevailing market prices (and not fixed prices) of all of the Common Stock (the "Registration Statement") underlying the Note and Common Stock underlying the Note and Warrant…"

As alleged in the complaint, despite its obligation to do so, TPT failed to register EMA's shares within 45 days of the issue date, as required by the Note and SPA.  Moreover, in further violation of the terms of the Note and SPA, defendant was not Rule 144 eligible within 6 months of the issue date, and defendant also violated the terms of the Note and SPA by failing to maintain a reserve of shares, despite EMA's request, as of November 21, 2019.

On July 17, 2020, EMA submitted a notice of conversion, seeking to convert the Note into 216,950,627 shares of TPT stock.  However, TPT failed to deliver the shares of stock by the one-day deadline provided in the relevant agreements.

On or about June 11, 2020, the Note matured, but TPT failed to pay or otherwise satisfy the terms of the Note.  Thus, on or about September 17, 2020, EMA issued a notice of default to TPTW.  Section 3.2 of the Note provides for a breach in the event that:

> The Borrower fails to issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligation to do so at any time following the execution hereof or) upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent  in transferring (or  issuing) (electronically or  in certificated  form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent  not to  remove or impairs, delays, and/or hinders its transfer agent from removing) any restrictive  legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement,

statement or threat that it does not intend to honor the obligations described in this paragraph)… It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered or frustrated due to a balance owed by the Borrower to its transfer agent…

Likewise, Section 5 of the SPA provides that:

Upon receipt of a duly executed Notice of Conversion, the Company shall issue irrevocable instructions to its transfer agent to issue certificates, registered in the name of the Purchaser or its nominee, for the Conversion Shares in such amounts as specified from time to time by the Purchaser to the Company upon conversion of the Note, or any part thereof, in accordance with the terms thereof (the "Irrevocable Transfer Agent Instructions"). In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement, a fully executed irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note)) signed by the successor transfer agent to Company and the Company.

The complaint further alleges that TPT failed to pay the Note upon maturity. Based on the foregoing events, TPT's failure to honor EMA's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" as defined in the Note.

Section 8 of the Note identifies the remedies for the differing Events of Default. Among other things, EMA is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law. Page 1 of the Note provides that: "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid ("Default Interest")." Due to TPT's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

Section 3.16 of the Note provides that, in the event of default, "all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without

limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity."

**The Counterclaims**

Defendant's Amended Answer, Affirmative Defenses and Counterclaims were filed on December 28, 2020. Specifically, defendant asserts counterclaims for violation of Section 15(A)(1) of the Exchange Act (first claim for relief); a declaratory judgment that "the underlying agreements are unconscionable" and "unenforceable," including the liquidated damages section, and for a declaration that "the legal fee provisions of the agreements be mutual"; unjust enrichment; and for attorneys' fees.

The counterclaims, however, fail adequately to factually support these causes of action and/or they are dismissible as a matter of law. The same is true with respect to the affirmative defenses.

## ARGUMENT

### POINT I.

### THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY

#### A. The Causes of Action for Securities Fraud Fails

##### (i) Defendant's First Counterclaim for Securities Fraud Is a Poorly Disguised Breach of Contract Claim

Defendant does not assert a counterclaim for breach of contract, likely because they are fully aware that it is the true breaching party. Nevertheless, the first counterclaim for "securities fraud" is nothing more than a poorly disguised breach of contract claim. Courts routinely reject attempts to transform what are in essence breach of contract claims into securities fraud claims for the purpose of seeking of punitive or other non-contractual damages. *See Alfandary v. Nikko*

*Asset Mgt., Co*., 2019 U.S. Dist. LEXIS 169524, at *17 (S.D.N.Y. Sep. 30, 2019) ("Here, it can

hardly be said that any of the Plaintiffs was "tricked" into parting with his or her SARs.  Rather,

Plaintiffs' hands were forced by virtue of Defendants' interpretation of the relevant contractual

terms. Whether or not Defendants violated their contractual obligations, however, is not a

question suited for resolution under federal securities law"); *Kramer v. Time Warner Inc*., 937

F.2d 767, 776 (2d Cir. 1991) (plaintiff "may not transform [a] state law breach of contract or

fiduciary duty action into a fraud claim under the federal securities laws"); *Drexel Burnham*

*Lambert Inc. v. Saxony Heights Realty Assocs.,* 777 F. Supp. 228, 235 (S.D.N.Y. 1991)

(dismissing securities fraud claim amounting to a "contract dispute dressed up in the language of

fraud"); *Kramer,* 937 F.2d 767, 776 (2d Cir. 1991) (stating that a plaintiff "may not transform [a]

state law breach of contract or fiduciary duty action into a fraud claim under the federal

securities laws").

      For this reason alone, the first counterclaim for securities fraud should be dismissed.

###     (ii)    Defendant's First Counterclaim Must Be Dismissed Because <u>Section 15(a)(1) Does Not Provide For A Private Right of Action</u>

      This action is on all-fours with *EMA Financial, LLC v. Vystar Corp.*, 2020 U.S. Dist.

LEXIS 149778, *9-10 (S.D.N.Y. Aug. 18, 2020), which articulated the long-held precedent that

no private right of action exists for a supposed violation of Section 15(a)(1).  *Id.* ("Vystar

concedes there is no private right of action for damages pursuant to <u>Section 15(a)(1)</u> of the

Exchange Act"); *Goodman v. Shearson Lehman Bros., Inc*., 698 F. Supp. 1078, 1083 (S.D.N.Y.

1988); *Baum v. Phillips, Appel & Walden, Inc*., 648 F. Supp. 1518, 1529 (S.D.N.Y. 1986)("In the

absence of any indication of congressional intent to create a private right of action for violations

of § 15, plaintiffs' fifth cause of action is dismissed").  For this reason alone, the dismissal of the

first counterclaim is mandated.

### (iii)  The First Counterclaim for Securities Fraud Also Fails
### <u>Because EMA Is Not Required to Register as Broker-Dealer</u>

As part of the first counterclaim, defendant contends that EMA conducted its business and used the "instrumentalities of interstate commerce…while not registered with the SEC as a securities dealer."  *See* Counterclaims, ¶63.  Therefore, by implication, defendant effectively asserts that EMA violated securities laws by failing to register as a broker dealer.  This is wrong because whether or not EMA is registered as a broker dealer has no bearing on the performance of the agreement.  In fact, the argument that defendant attempts to make has been soundly rejected by courts in identical convertible note situations.  *See LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540, at *15-16 (S.D.N.Y. Sep. 28, 2018)("ExeLED's tenth and eleventh affirmative defenses, which assert that LG's suit is barred and that the contracts-in-suit are void because LG failed to register as a "dealer" (as the term is defined in Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1))… also fail…. the Court can only conclude that the Contracts were still capable of performance even if LG failed to register as a dealer. Put another way, the Note and the SPA are not voidable "unlawful contracts,"…Accordingly, ExeLED's tenth and eleventh affirmative defenses fail as a matter of law, and the Court concludes that the first element of LG's breach of contract claim — the existence of a valid contract — is met").

Based on years of SEC guidance, it is indisputable that EMA does not fall under the definition of a dealer, but that instead, it is categorized as a trader.  A "trader" is a party that buys and sells securities for its own accounts, but does not fall within the definition of a dealer and is not required to register with the SEC. *See, e.g., National Council of Savings and Loans,* SEC No-Action Letter, 1986 SEC No-Act LEXIS 2609 (July 27, 1986) at 4.  By contrast, pursuant to Section 3(a)(5)(A), "[t]he term 'dealer' means any person engaged in the business of buying and

selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C §78c(a)(5)(A). If read broadly, the reach of this Section would extend well beyond the legislative intent; therefore, the SEC has offered guidance to delineate between those that qualify as dealers and those that do not, or, traders.

A number of factors are considered when determining whether a party is a dealer or a trader. First, a dealer buys and sells securities as a part of regular business. *Id*. at 2. Second, a dealer contemporaneously and continuously buys and sells securities on the market. *Id*. at 4. Third, a dealer handles other people's money or securities and invests on their behalf. Id. Fourth, a dealer makes a market in securities. *Id*. at 2. Fifth, a dealer buys and sells securities on behalf of a regular clientele. Id. at 10. Sixth, a dealer renders investment advice or whether individuals employ the party to earn a return on their behalf. *Id*. at 11. Without meeting any of these criteria, the SEC would not require registration as a dealer.

Indeed, in 2002, the SEC acknowledged, and added to, these factors, proposing codification thereof, stating:

> As developed over the years, the dealer/trader distinction recognizes that dealers normally have a regular clientele, hold themselves out as buying or selling securities at a regular place of business, have a regular turnover of business (or participate in the distribution of new issues), and generally transact a substantial portion of their business with investors (or, in the case of dealers who are market makers, principally trade with other professionals). In contrast, traders have a less regular volume, do not handle others' money or securities, do not make a market, and do not furnish dealer-type services such as rendering investment advice, extending or arranging for credit, or lending securities.

Each of these factors, paired with the fact that the SEC is, and has been, undoubtedly aware of plaintiff's industry for decades, favors a finding that plaintiff is in fact a trader, exempt from the registration requirement of Section 15(a)(1).

While plaintiff does sell securities when the convertible debt is repaid in stock, it is not alleged that it is contemporaneously buying and selling securities for investment purposes because, in fact, it is not. Moreover, there is no allegation that plaintiff handles other people's money or securities to invest on their behalf. There is also no allegation that plaintiff makes a market for securities (and even if this had been alleged, it would be demonstrably false). The SEC defines a "market maker" as "a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price." Here, defendant's pleadings express recognition that plaintiff acquires stock through the repayment of convertible debt, and sells the stock at the publicly quoted price.

Furthermore, there is no allegation that plaintiff buys and sell stock on behalf of any person or entity but itself, let alone a regular clientele. Finally, there is no allegation that plaintiff renders any investment advice, only that it sells stock on the open market that it acquired through convertible debt. Therefore, plaintiff's sale of stock acquired through convertible debt does not fall within the purview of the SEC's definition and guidance as to what constitutes a dealer.

Defendant does not, because it cannot, "explain why the act of conveying shares violates the broker-dealer provision of the Exchange Act" and, even assuming *arguendo* "that selling converted shares made EMA a broker-dealer, the selling of those shares was not required by the contract" and, thus, "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws." *EMA Financial, LLC v. Vystar Corp.*, *supra*, 2020 U.S. Dist. LEXIS 149778, at *14, *quoting*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F. 3d 195, 207 (3d Cir. 2006). As a result, the Note and SPA are wholly enforceable as a matter of law.

10

Finally, "even if [EMA] should have registered, nothing in the Note or the SPA indicate[d] that those contracts 'could not have been legally performed' because [EMA] failed to do so." *Vystar Corp.*, *supra*, 2020 U.S. Dist. LEXIS 149778, at *15, *quoting*, *Capital Funding, LLC v. ExeLED Holdings, Inc.*, *supra, 2018* U.S. Dist. LEXIS 202540, at *5.  Indeed, "neither the Note nor the SPA require [EMA] to take any action that would violate [the broker-dealer] statute" and defendant alleges no facts to even raise an issue of fact to the contract.  *Id* at *18.

In all events, "the Note and SPA required only that EMA provide [TPT] with a loan and that [TPT] allow EMA to convert the balance into shares.  The fact that EMA might have later sold its shares in violation of the broker-dealer provision [and it did not] is tangential to the contracts themselves.  *Id.* at *20.

Accordingly, the first counterclaim (and the corresponding affirmative defense) fails as a matter of law.

### (iv)    The Securities Fraud Claim Fails To Comply With Rule 9(b) Or Properly To Plead Causation, Scienter, or Damages

Even if the foregoing were not sufficient for this Court to dismiss the first counterclaim, its dismissal would still be required because the allegations in the pleading do not come close to meeting the particularity requirements of Fed. R. Civ. P. 9(b).  This provision mandates that allegations of fraud specify (1) the statements alleged to be fraudulent, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent.  *See Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994).  Nor does it meet the particularity and intent requirements imposed by the Private Securities Reform Act of 1995.  *See, e.g., In Re Baesa Securities Litigation*, 969 F. Supp. 238, 242 (S.D.N.Y. 1997).  Rather, defendant's securities fraud claim relies wholly on generalized allegations without any of the requisite specificity.  Under Fed. R. Civ. P. R. 9(b), a complaint alleging fraud may aver intent generally,

but "it must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005, 98 L. Ed. 2d 650, 108 S. Ct. 698 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.) (en banc)), *cert. denied*, 493 U.S. 811, 107 L. Ed. 2d 24, 110 S. Ct. 56 (1989).

Plaintiff also fails properly to allege scienter. "[P]laintiffs must ... state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). To properly allege scienter, the pleader must allege "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) (citation omitted). Once again, the counterclaims lacks any specifics that would come close to meeting this standard.

Furthermore, defendant fails adequately to allege loss or loss causation; instead, it asserts in essence that converting under the agreements (or attempting to do so), in and of itself, is somehow a claim for securities fraud. However, defendant fails to specify how converting under the agreement(s) caused an improper loss. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (element of a claim under Rule 10b-5 is loss causation).

Finally, "to survive a motion to dismiss**,** a [pleading] must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), *quoting*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" sufficiently constitute a claim. *Iqbal,* 129 S. Ct at 1949, *citing, Twombly*, 550 U.S. at 555. Pursuant to *Iqbal* and *Twombly*, a party must plead with such factual detail so as to sufficiently "nudge [its] claims . . .

across the line from conceivable to plausible." *Iqbal*, 129 S. Ct. at 1950-51. While a claim does not require the recitation of detailed factual allegations, it does require enough facts to state a claim to relief that is plausible *prima facie*. *Iqbal*, 129 S. Ct. at 1949. A claim must demonstrate "more than a sheer possibility" that a non-moving party has acted unlawfully. *Iqbal,* 129 S. Ct. at 1949.

Defendant fails in this regard, both with respect to the first counterclaim and the remaining counterclaims as well.

### B.    The Counterclaim For a Declaratory Judgment Fails

#### (i)    Declaratory Judgment Is Not an Independent Cause of Action

It is well established that the Declaratory Judgment Act, 28 U.S.C. §2201 "is procedural only and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). In other words, a judicial declaration that a particular right exists is a remedy that is only available if a plaintiff is entitled to relief on the basis of substantive law. *Ray v. Samsung Electronics America*, Inc., 2016 U.S. Dist. LEXIS 79260, *26 (June 17, 2016) (*citing Caronia v. Philip Morris USA*, Inc., 715 F.3d 417,438 (2d Cir. 2013)). In general, an "equitable remedy" does not constitute an "independent cause of action." *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977).

"[T]he Second Circuit has held that a declaratory judgment action should be entertained [only] (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding...") (internal quotation marks and citation omitted); *Bayerische Hypo-Und Vereinsbank AG v. AIG Matched Funding Corp*., 2010 U.S. Dist. LEXIS 18124, 2010 WL 692873, at *1 (S.D.N.Y. Mar. 1, 2010); *Apple Records, Inc. v. Capitol Records,*

13

*Inc.*, 137 A.D.2d 50, 529 N.Y.S.2d 279, 281 (1st Dep't 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract").

Here, a declaratory judgment serves no useful purpose as the parties' respective duties, rights and remedies are fully articulated in the Note and the SPA. Moreover, because the terms of both are clear and unambiguous, there is no uncertainty, insecurity and/or controversy that cannot be resolved by simply reviewing the terms of those agreements.

      **(ii)**    **<u>Unconscionability Is An Affirmative Defense, Not a Cause of Action</u>**

Defendant seeks a declaratory judgment primarily based on the assertion that the agreements are "unconscionable and oppressive." Putting aside that defendant fails to plead sufficient specific facts in support (or offer any supportive evidence by virtue of the complained of writings themselves), which alone mandates immediate dismissal, but unconscionability is an affirmative defense, not a cause of action, therefore mandating the dismissal of the second counterclaim. *See Colonial Funding Network, Inc. v. Epazz, Inc*., 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017)([U]nconscionability is an affirmative defense to the enforcement of a contract").

      **(iii)**    **The Counterclaim For A Declaratory Judgment Is Not Cognizable Because Defendant Fails Properly To Plead and Cannot Demonstrate That The Terms of the Relevant Agreements Are <u>Commercially Unreasonable</u>**

Defendant complains that the relevant agreements are commercially unreasonable because the provision that provides for the awards of attorneys' fees in the event of a lawsuit is one-sided in favor of plaintiff. This is insufficient either to plead or to demonstrate unconscionability, which, in any event, is a defense and not a stand-alone cause of action.

Effectively, defendant contends that it should not be subject to the terms and conditions of a freely bargained contract, which it was under no obligation to enter and had every opportunity to reject. In fact, while primarily complaining about the attorneys' fees provision and that it will incur fees in defending this action, which in and of itself is insufficient to form any cognizable claim, defendant offers no other reasonable argument for declaring the agreements unenforceable. Courts regularly dismiss similar claims of unconscionably, particularly where, as here, there are no specifics offered respecting the purported reason why a publicly traded company like defendant should be able to escape a freely bargained for agreement. *See EMA Fin. v 5Barz Intl.*, 2019 U.S. Dist. LEXIS 230418, at *19 (S.D.N.Y. Sep. 18, 2019)(dismissing claim that identical convertible note was "unconscionable"); *LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist. LEXIS 126991, at *38 (E.D.N.Y. July 29, 2019) (dismissing claim of unconscionability in connection with similar convertible note); *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 145 (N.D.N.Y. 2002) ("While plaintiffs have argued in support of their unconscionability defense that no reasonable person would have entered into the agreement struck by the parties, there are no specifics alleged as to how any of the provisions contained within the relevant agreements were not commercially reasonable. In light of the lack of any evidence suggesting that a reasonable jury could make a finding of substantive unconscionability, I reject the unconscionability defense now proffered by the plaintiffs . . . as a basis for denial of defendants' motion for summary judgment on the note claims."); *Tulger Contracting Corp. v. Star Bldg. Sys.*, Inc., 2002 U.S. Dist. LEXIS 8620, 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) ("Plaintiff . . . argues that the above-quoted limitations are unconscionable as a matter of public policy. But in response to defendant's

15

summary judgment motion, plaintiff has failed to adduce competent evidence sufficient to make this a jury question[2]").

Notably, with respect to attorneys' fees provision in the Note, which permits plaintiff to recover its legal fees and costs in connection with this action, defendant asks this Court to declare such provision to be mutual. This Court, however, is not empowered to do so and defendant nowhere argues that any provision respecting the payment of legal fees is vague or ambiguous and, therefore, requires parole evidence or this Court's interpretation thereof. To the contrary, the provision is clear on its face. As a matter of law, neither defendant nor this Court is empowered to rewrite any contract or other agreement between the parties or any provision contained therein. *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2012 U.S. Dist. LEXIS 125341, *12-13 (S.D.N.Y. Sep. 4, 2012)("Had the parties intended to this restriction, they could have included such language. They did not and the Court will not do so now 'under the guise of interpreting the writing'"), *citing*, *Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 303, 690 N.Y.S.2d 489, 493 (1999)("a court 'may not rewrite clear and unambiguous contracts'"); *Turner Constr. Co. v. Kemper Ins. Co.*, 198 Fed. Appx. at 30, 2006 U.S. Dist. LEXIS 8489, at *4.

### C.    The Counterclaim For Unjust Enrichment Is Barred

By defendant's own admission, this action is grounded in two (2) written agreements – a convertible note in the amount of $250,000.00 and a securities purchase agreement. These writings govern the parties, respective duties, obligations, and expected conduct thereunder. The Note and the SPA are enforceable contracts. As such, quasi contract claims like unjust enrichment are precluded as a matter of law. *See Ohio Players, Inc. v. Polygram Records, Inc.*, 2000 U.S. Dist. LEXIS 15710, at *4 (S.D.N.Y. Oct. 27, 2000)(a quasi-contractual claim

---

[2]    For the same reasons, the affirmative defense of unconscionability should be dismissed.

"ordinarily can be maintained only in the absence of a valid, enforceable contract"); S*CM Grp., Inc. v. McKinsey & Co., Inc*., 2011 U.S. Dist. LEXIS 31972, 2011 WL 1197523, at *7-8 (S.D.N.Y. March 28, 2011) ("where an express and valid contract exists concerning the rights at issue, quasi-contract claims such as unjust enrichment are precluded").

### D.    The Fourth Counterclaim For Attorneys' Fees Is Baseless

Throughout its pleading, defendant complains that, under the Note and/or SPA, only plaintiff is entitled to seek and be awarded its attorneys' fees in connection with any legal proceedings between the parties.  There is no provision that calls for the award of attorneys' fees to defendant for any reason.  This fact is here dispositive in plaintiff's favor as this Court cannot rewrite the agreements or create any rights thereunder that do not already exist by virtue of the plain and unambiguous contractual language.  As stated above, a matter of law, neither defendant nor this Court is empowered to rewrite any contract or other agreement between the parties or any provision contained therein.  *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2012 U.S. Dist. LEXIS 125341, at *12-13; *Chemical Bank v. Meltzer*, 93 N.Y.2d at 303, 690 N.Y.S.2d at 493 (1999); 198 Fed. Appx. 28, 2006 U.S. Dist. LEXIS 8489 .

The fourth counterclaim, therefore, should be dismissed with prejudice.

### POINT II.

### THE AFFIRMATIVE DEFENSES SHOULD
### BE DISMISSED IN THEIR ENTIRETY

The affirmative defenses should be stricken as conclusory, factually unsupported and/or unsubstantiated, or inadequately plead.  The first affirmative defense (Plaintiff's claims are barred due to Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)], acting as an unregistered broker dealer) is addressed above and it should be stricken for the same reasons. The next affirmative defense — failure to state a claim for relief upon which relief can be

granted --- is risible given that defendant's own pleadings acknowledge the contrary to be true.  Where, as here, a defendant disputes the plaintiff's claims and argues (wrongfully) that it is the true party who is entitled to relief, such does not mean that a cognizable claim for relief has not been articulated in the first place.  That is, a dispute respecting whether plaintiff can prove its claim does not constitute a failure by the plaintiff to state a cognizable cause of action.

The affirmative defenses that plaintiff's claims for relief are barred by the doctrines of unclean hands, waiver, estoppel, satisfaction and accord based on the contention that plaintiff has already received funds in excess of the amount due under the loan are factually unsupported and conclusory and, in any event, conclusively disproven above, where EMA demonstrates that it converted only precisely those amounts due under the Note.  For the same reasons, the affirmative defense that plaintiff has received full repayment of the amount due under the Note should be stricken.  Moreover, the full repayment of the loan and/or accord and satisfaction are defenses, not affirmative defenses.  The same is true with the purported affirmative defense that the relief sought by plaintiff is "exorbitant."  The burden will ultimately be on plaintiff to demonstrate its entitlement to the damages requested herein.  Such is not required during the pleading stage of this action.

The affirmative defense that "the underlying agreements set forth an impermissible and unenforceable liquidated damages provision" is also easily dismissible in light of the fact that EMA is not seeking to enforce any portion of the liquated damages provision.  *See EMA Fin., LLC v AIM Exploration, Inc*., 2019 U.S. Dist .LEXIS 26141, at *23 (S.D..NY. Feb. 19, 2019).  And, defendant fails factually to support its contention that the liquidated damages provision is either impermissible or unenforceable.

The affirmative defense that plaintiff's claims are barred by applicable usury laws is also factually unsupported and unsupportable.  Indeed, the complaint seeks only the relief that it is entitled to under the parties' agreements, which on their face limit damages to what is legally permissible.

Finally, the affirmative defense of unconscionability is also unsupported and is addressed in Point I above.

For these reasons, the affirmative defenses should be stricken in their entirety.  *See Aspex Eyewear, Inc. v Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008) (striking affirmative defenses for failure to meet the minimal requirements of notice pleading under Fed.R.Civ.P. 8(a), where the claims and affirmative defenses were asserted without factual support).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court dismiss with prejudice defendant's counterclaims and affirmative defenses, and that it grant such other and further relief as it deems just and proper.

Dated: New York, New York
          January 5, 2021                         Respectfully Submitted,


                                                  LAW OFFICE OF JEFFREY FLEISCHMANN PC

                                                  By: /s/Jeffrey Fleischmann_____
                                                        Jeffrey Fleischmann, Esq.
                                                  *Attorneys for Plaintiff EMA Financial, LLC*

                                                  150 Broadway, Suite 900
                                                  New York, N.Y. 10038
                                                  Tel. (646) 657-9623
                                                  Fax (646) 351-0694
                                                  jf@lawjf.com