UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EMA FINANCIAL, LLC, a Delaware Limited : Case No. 20-cv-08781-VSB
Liability Company,

              Plaintiff,

  - against -

TPT GLOBAL TECH, INC., a Florida Corporation,

             Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND TO STRIKE THE AFFIRMATIVE DEFENSES

Dated: New York, New York
      March 15, 2021

LAW OFFICE OF JEFFREY FLEISCHMANN PC

*Attorneys for EMA Financial, LLC*

150 Broadway, Suite 900
New York, New York 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY ................................................................................................................ 2

        A.    The First Counterclaim Fails Because EMA Was Not Required To Register as Broker-Dealer; Even If It Was, As A Matter of Fact and Law, The Relevant Contracts Are Not Illegal and Cannot Be Voided ................................. 2

        B.    The Second Counterclaim For a Declaratory Judgment Cannot Stand .. 6

            (i)    Declaratory Judgment Is Not an Independent Cause of Action ... 6

            (ii)    Under The Facts Alleged, A Claim That The Relevant Agreements Are Unconscionable Is Not Stated ................................................ 6

                a.    The Attorneys' Fees Provision Is Not Unconscionable ................................................................................................ 7

                b.    Defendant Fails Sufficiently To Plead Any Other Facts To State A Claim That The Agreements Were Unconscionable ............ 7

        C.    The Third and Fourth Counterclaims Should Be Dismissed ................. 9

    II.    THE AFFIRMATIVE DEFENSES ARE NOT "WELL PLED" AND SHOULD BE STRICKEN IN THEIR ENTIRETY ..................................................... 9

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Aspex Eyewear, Inc. v Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620 (S.D.N.Y. 2008) ....................10

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) ....................................4

Blue Citi, LLC v. 5Barz Int'l Inc., 338 F. Supp. 3d 326 (S.D.N.Y. 2018) ....................10

*Caronia v. Philip Morris USA*, Inc., 715 F.3d 417 (2d Cir. 2013) ..................................6

*Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y. 2017)..................7

*Comty. Mgmt. Servs., LLC v. Amberfield Ass'n*, 2013 Del. C.P. LEXIS 75 (Del. Ct. Comm.
   Pleas Oct. 18, 2013)..................................................................7, 8

*Couldock & Bohan, Inc. v. Societe Generale Secs. Corp.*, 2020 U.S. Dist. LEXIS 5904 (D. Conn.
   Jan. 14, 2020) .......................................................................4

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 2004 U.S. Dist. LEXIS 5136
   (S.D.N.Y. Apr. 4, 2004)..............................................................10

*EMA Fin. v 5Barz Intl.*, 2019 U.S. Dist. LEXIS 230418 (S.D.N.Y. Sep. 18, 2019) .......................9

*EMA Fin., LLC v AIM Exploration, Inc.*, 2019 U.S. Dist. LEXIS 26141
   (S.D.N.Y. Feb. 19, 2019)........................................................1, 3, 10

*EMA Fin., LLC v. Joey New York, Inc.*, 2019 U.S. Dist. LEXIS 161454
   (S.D.N.Y. Sep. 22, 2020).............................................................1, 3

*EMA Fin., LLC v. NFusz, Inc.*, 2020 U.S. Dist. LEXIS 240840 (S.D.N.Y. Dec. 22, 2020) .......1, 3

*EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020).........................1, 3, 4, 5

*Graham v. State Farm Mut. Auto Inc., Co.*, 565 A.2d 908 (Del. 1989) ..........................8

*J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540 (Del. Super. Ct. 1977)................8

LG Capital Funding, LLC v. Aim Exploration, Inc., 2018 U.S. Dist. LEXIS 147411 .................10

*LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540
   (S.D.N.Y. Sep. 28, 2018).............................................................4, 5

*LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist. LEXIS 126991
 (E.D.N.Y. July 29, 2019) .................................................................................................9

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) ........................9

*Nakamura v. Fujii*, 253 AD2d 387, 677 N.Y.S.2d 113 (1st Dep't 1998) ........................................9

*Pompano—Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.*, 794 F. Supp. 1265
 (S.D.N.Y. 1992) ..............................................................................................................4

*Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, A.3d 1119 (Del. 2014) ........................7, 8

*RWP Consol., L.P. v. Salvatore*, 534 F. Supp. 2d 364 (D. Conn. 2008) .........................................4

*SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla. 2020) ............................................................5

*SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786 (11th Cir. 2015) ........................................5

*Tulowitsky v. Atlantic Richfield Co.*, 396 A.2d 956 (Del. 1978) ....................................................8

*United States SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019) .....................5, 6

*United States v. Grimmel Indus., LLC*, 2018 U.S. Dist. LEXIS 131455
 (N.D.N.Y. Aug. 6, 2018) ............................................................................................9, 10

*Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977) .............................................................................6

**Statutes**

15 U.S.C. § 78cc(b) ..........................................................................................................................3

15 U.S.C. §78cc ...............................................................................................................................5

15 U.S.C. §78o(a)(1) ....................................................................................................................2, 5

**Rules**

Fed.R.Civ.P. 12(f) ...........................................................................................................................9

Plaintiff EMA Financial, LLC respectfully submits this reply memorandum of law in further support of its motion to dismiss defendant's counterclaims and affirmative defenses.

## PRELIMINARY STATEMENT

The whole of defendant's opposition is grounded in the false contention that EMA should be categorized as a "dealer" and, if it is so categorized, then the agreements at issue are void and defendant has a claim for rescission. Defendant is wrong on all accounts. First, the facts as pleaded lead to the indisputable conclusion that EMA is not a dealer -- either by virtue of its conduct or any purported "admissions." Moreover, as described herein, even assuming *arguendo* that EMA should have registered as a dealer, the same result obtains because the agreements between the parties are not illegal (neither is the business of EMA) and, therefore, not voidable.

Notably, while defendant references multiple lawsuits involving EMA, it ignores that EMA was the plaintiff in almost all of them, and those fully adjudicated have resulted in judgment in EMA's favor on liability.[1] Most notably, defendant conveniently ignores that issues respecting whether EMA is a dealer and whether EMA's rights under an SPA can be upheld has already been analyzed in EMA's favor in *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020). In that case, the Southern District determined that rescission of an almost identical SPA is unavailable. Based on the conclusions in *Vystar*, not to mention other binding authority, the contention that EMA's failure to register as a broker-dealer renders the SPA void is simply wrong. In *Vystar*, as here, the SPA was a lawful contract. As a matter of law, a contract can be voided only where there could be no performance without violating the Exchange Act. The Southern District opined in *Vystar* that there was no such violation.

---

[1] *See, e.g.*, *EMA Fin., LLC v. NFusz, Inc.*, 2020 U.S. Dist. LEXIS 240840 (S.D.N.Y. Dec. 22, 2020)(motion for summary judgment on liability granted; cross-motion to amend answer and counterclaims denied); *EMA Fin., LLC v. AIM Exploration, Inc.*, 2019 U.S. Dist. LEXIS 26141 (S.D.N.Y. Feb. 19, 2019)(motion for partial judgment on liability granted; cross-motion to dismiss complaint denied); *EMA Fin., LLC v. Joey New York, Inc.*, 2019 U.S. Dist. LEXIS 161454 (S.D.N.Y. Sep. 22, 2020)(motion for partial summary judgment on liability granted and to dismiss counterclaims granted).

The first counterclaim, therefore, cannot be sustained. It, therefore, follows that the second counterclaim for a declaratory judgment also cannot stand. As a matter of law, there is nothing "unconscionable and oppressive" about either the Note or the Securities Purchase Agreement. There are no specific facts alleged to state a claim that EMA took unfair advantage of or surprised defendant, or that the agreements were so one-sided as to be unconscionable. As for the third counterclaim for unjust enrichment, defendant does not address the arguments advanced in EMA's moving papers. And, the fourth counterclaim for attorneys' fees cannot stand if this Court properly dismisses the other counterclaims. Similarly, the "kitchen sink" affirmative defenses, many of which repeat contentions asserted in the counterclaims, should be stricken as either factually or legally unsupported, or both.[2]

## ARGUMENT

### POINT I.

### THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY

A. **The First Counterclaim Fails Because EMA Was Not Required To Register as Broker-Dealer; Even If It Was, As A Matter of Fact and Law, The Relevant Contracts Are Not Illegal and Cannot Be Voided**

Even assuming *arguendo* that Section 15(a)(1) of the Exchange Act permits contractual rescission under the right circumstances, dismissal of the first counterclaim is still mandated. Defendant repeatedly asserts that EMA violated securities laws by failing to register as a broker dealer, thereby rendering illegal the contracts here at issue (i.e., the Note and the SPA). Defendant is wrong as a matter of both fact and law. *See* 15 U.S.C. §78o(a)(1).

---

[2] Finally, it should be noted that the opposition submitted by TPT states several times that "EMA does not deny" certain of its allegations. As this Court no doubt is aware, a party that moves to dismiss based on the sufficiency of the pleadings is not required to admit or deny the material allegations advanced by the other side. Indeed, such would have been improper in the context of the instant motion.

Defendant takes great pains to point out the existence of a number of lawsuits involving EMA in an attempt to create a narrative of wrongdoing as a "toxic lender." To the contrary, EMA's other lawsuits demonstrate the viability of its claims and the legality of the Note and SPA, and wholly undermine the counterclaims. As stated above, the cited cases – which also involved the failure to honor EMA's stock conversion requests – were brought by EMA and adjudicated on the merits in its favor. *See, e.g.*, *EMA Fin., LLC v. NFusz, Inc.*, 2020 U.S. Dist. LEXIS 240840 (S.D.N.Y. Dec. 22, 2020)(motion for summary judgment on liability granted); *EMA Fin., LLC v. AIM Exploration, Inc.*, 2019 U.S. Dist. LEXIS 26141 (S.D.N.Y. Feb. 19, 2019)(motion for partial judgment on liability granted; cross-motion to dismiss complaint denied); *EMA Fin., LLC v. Joey New York, Inc.*, 2019 U.S. Dist. LEXIS 161454 (S.D.N.Y. Sep. 22, 2020)(motion for partial summary judgment on liability granted and to dismiss counterclaims granted). Certainly, judges of the Southern District would not have ruled in EMA's favor had they determined that EMA was required to register with the SEC as a dealer; that its non-registration as a dealer constituted a violation of federal securities laws; and/or that any other basis existed to declare the SPAs to be unenforceable.

Most notably, defendant failed to acknowledge *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020)(cited in the opening brief), wherein the Southern District analyzed whether rescission of an almost identical SPA is available. Ultimately, the *Vystar* Court opined that it was not. In *Vystar*, as here, the request for rescission under Section 15 of the Exchange Act was based on EMA's alleged failure to register as a broker-dealer. However, if no such registration was required, then the claim could not be stated. As described in *Vystar*, in order to state a rescission claim under 15 U.S.C. § 78cc(b), "a party must show 'that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the [opposing party], and (3) he is in the class of persons the Act was designed to protect.'" *Vystar*, 336 F.R.D. at 81, *quoting*, *RWP Consol., L.P. v. Salvatore*, 534 F. Supp. 2d 364, 368 (D. Conn. 2008)[citations omitted]. According to *Vystar*, "[t]his test manifests the common-law

3

principle that a contract to perform an illegal act is void." *Id.*, *citing*, *Couldock & Bohan, Inc. v. Societe Generale Secs. Corp.*, 2020 U.S. Dist. LEXIS 5904 (D. Conn. Jan. 14, 2020). However, Section 29(b) can only render a contract void if it is made in violation of the Exchange Act or if its performance is in violation of the Act. *Id*. Thus, according to *Vystar*, "rescission is not permitted when 'the violation complained of is collateral or tangential to the contract between the parties'" and the contract at issue can be voided only where "there could be no performance under the contract without violating the Act." *Id*. Under Section 29(b), "only unlawful contracts may be rescinded not unlawful transactions made pursuant to lawful contracts." *Id.*, *quoting*, *Pompano—Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992).

The *Vystar* Court placed considerable emphasis on EMA's argument that Vystar failed to show that "the contract involved a prohibited transaction." *Id*. [citations omitted]. The *Vystar* Court further took into account the defendant's failure to identify a provision in the Securities Purchase Agreement "that obligates Ema to act as a broker dealer." *Id.* Indeed, it was noted:

> Vystar contends that Ema has acted as a broker-dealer by converting shares at a below-market rate and selling the shares. But Vystar does not explain why the act of converting the shares violated the broker-dealer provision of the Exchange Act. And assuming arguendo that the selling of converted shares made Ema a broker-dealer, the selling of those shares was not required by the contract. Thus, "[a]t the time the parties entered into the Agreement, the Agreement could be performed without violating provisions of the securities laws." <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 207 (3d Cir. 2006)(citation omitted. In such circumstances, the contracts are not illegal…Vystar can rescind the contracts only if they were illegal at the time they were made, not because Ema later engaged in an illegal transaction [citation omitted].

*Vystar*, 336 F.R.D. at 82. Thus, whether or not EMA is registered as a broker dealer has no bearing on the legality of the agreement. That is, even if EMA should have registered as a dealer (and this was not determined), nothing in the Note or the Securities Purchase Agreement indicated that either contract "could not have been legally performed" because EMA failed to do so. *Id*. at 82, *quoting*, *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540, *15 (S.D.N.Y. Sep. 28, 2018). The contracts are still capable of performance even if EMA was required to register, but

4

failed to do so (respectfully, it was not). *Id.* Thus, in *Vystar,* the Court followed the law as properly applied in the *LG Capital Funding* matter, wherein the latter court determined that "neither the Note nor the SPA require LG to take any action that would violate [the broker-dealer] statute." *Vystar*, 336 F.R.D. at 83, *quoting*, *LG Capital Funding, LLC*, 2018 U.S. Dist. LEXIS 202540, *15.

Here, as in *Vystar*, regardless of whether the sale of the shares was in violation of the broker-dealer provision of the act (and it was not) is tangential to the contracts themselves. *Id*. at 83. Plaintiff does not dispute that when the convertible debt is repaid in stock, it sells that stock. This is permissible without registering as a dealer. There is no allegation that plaintiff handles other people's money or securities to invest on their behalf, and, there is no allegation that plaintiff makes a market for securities or buys and sells stock on behalf of anyone else (and such is not alleged in the complaint). And, plaintiff nowhere alleges that plaintiff renders any investment advice. Therefore, plaintiff's sale of stock acquired through convertible debt does not fall within the purview of the SEC's definition and guidance as to what constitutes a dealer. As a matter of law, EMA is not required to register as a dealer. However, even if it is, there still is nothing illegal about the contracts here at issue and, therefore, defendant is not entitled to rescission, whether under Section 15(a)(1) of the Exchange Act (15 U.S.C. §780(a)(1)), 15 U.S.C. §78cc or any other authority. Therefore, the causes of action seeking rescission must fail.

As for the cases cited by defendant, they are wholly distinguishable. For example, in *SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla 2020), the defendant's entire business model was predicated on obtaining shares of stock at a discount and quickly selling those shares. The same was true in *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809-10 (11th Cir. 2015)("the centerpiece [to the definition of dealer] is the word 'business'" in the buying and selling securities). Similarly, in *United States SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019), the defendant was in the business of causing companies to issue shares of stock at discounted prices and those shares were

quickly resold to investors in unregistered transactions. As with the defendants in *Almagarby* and *Big Apple*, there was no other aspect of that business.

By contrast, EMA's business is not solely the buying and selling securities, but is predicated on providing funds to companies that need a cash infusion and the Note and SPA are issued in order to secure repayment. Even if EMA were a dealer (and it is not), the contracts are neither illegal nor call for the engagement in illegal acts. No discovery on the matter is needed.

Accordingly, the first counterclaim (and the corresponding affirmative defense) fails as a matter of law and must be dismissed.

### B. The Second Counterclaim For a Declaratory Judgment Cannot Stand

#### (i) Declaratory Judgment Is Not an Independent Cause of Action

According to defendant, because the Note and the Securities Purchase Agreement are to be interpreted in accordance with Delaware law. However, because declaratory relief is <u>procedural</u>, there is no cause of action for a declaratory judgment for the reasons set forth in the opening brief. As matter of law, an equitable remedy does not constitute an "independent cause of action." *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977).

Here, the complaint does not allege that there is any ambiguity in the relevant agreements or that there is any uncertainty or controversy with respect to interpretation. Thus, a declaratory judgment serves no useful purpose as the parties' respective duties, rights and remedies. For these reasons alone, the second counterclaim should be dismissed.

#### (ii) Under The Facts Alleged, A Claim That The Relevant Agreements Are Unconscionable Is Not Stated

Even if declaratory relief is properly asserted as a separate counterclaim, defendant still fails to allege sufficient facts that either the Note or the Securities Purchase Agreement is unconscionable. As stated in the opening brief, unconscionability is a defense, not a cause of action (under both New York

and Delaware law), therefore mandating the dismissal of the second counterclaim.[3] However, even assuming *arguendo* that unconscionability can stand as an independent cause of action, the pleadings still fail. At the outset, as articulated in the opening brief, defendant fails sufficiently to plead that the Note and Securities Purchase Agreement are commercially unreasonable.

### a. The Attorneys' Fees Provision Is Not Unconscionable

In the counterclaims, defendant attacks as unconscionable the attorneys' fees provision in both the Note and the Securities Purchase Agreement because they purportedly are one-sided. *See* Counterclaims, ¶50. However, on further review, the attorneys' fees provisions <u>are</u> <u>not</u> one-sided at all. To the contrary, as forth in the Securities Purchase Agreement: "The prevailing party shall be entitled to recover from the other its reasonable attorney's fees and costs." *See* Securities Purchase Agreement, Section 10(a). This identical language also appears in paragraph 4.6 of the Note. The claim of unconscionability based on the attorneys' fee provision, therefore, crumbles.

### b. Defendant Fails Sufficiently To Plead Any Other Facts To State a Claim That The Agreements Were Unconscionable

Aside from the phantom attorneys' fees issue, it is unclear what the other bases for claiming unconscionability might be because additional facts are not sufficiently alleged. Although defendant cavalierly asserts that "portions [of the agreements] are unenforceable, such as the liquidated damages sections," this is not factually supported. *See* Counterclaims, ¶53.

Defendant complains that the provision for damages in the event of its breach are to the considerable benefit of plaintiff. *See* Counterclaims, ¶¶9, 11. However, because the very purpose of any such provision is to protect the party providing the funds in the event that they are not repaid, the

---

[3] *See Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017); *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, 86 A.3d 1119 (Del. 2014); *Comty. Mgmt. Servs., LLC v. Amberfield Ass'n*, 2013 Del. C.P. LEXIS 75, *10 (Del. Ct. Comm. Pleas Oct. 18, 2013).

7

contention is absurd. Otherwise, there would be no incentive for the party who has received funds – here, $235,000.00 – timely to comply with its obligations.

The complaint does not sufficiently allege that the agreements at issue were commercially unreasonably and, from their plain and unambiguous terms, they are not. With respect to unconscionability, it is well-established law that a contract will be found to be unconscionable only where "no man in his senses and not under delusion would make [the contract] on the one hand, and as no honest or fair man would accept, on the other." *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, *supra,* 2014 Del LEXIS 90, *29, 86 A.3d 1119, *quoting*, *Tulowitsky v. Atlantic Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)(citations omitted). There must be an absence of meaningful choice and contract terms must be unreasonably favorable to one of the parties. *See Comty. Mgmt. Servs., LLC v. Amberfield Ass'n*, *supra*, 2013 Del. C.P. LEXIS 75, *10-11. Here, the counterclaims nowhere allege any facts to the effect that defendant lacked any meaningful choice or that defendant's representative was deluded when he entered into the contract.

The question is whether the complained of provision(s) amount to the taking of advantage of one party over the other; however, the mere disparity in bargaining power will not support an unconscionability finding. *Id., citing*, *J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 552 (Del. Super. Ct. 1977); *Tulowitsky*, 396 A.2d at 960. In short, for a contract or contractual provision to be unconscionable, the terms must be "so one-sided as to be oppressive"[4] and "courts are particularly reluctant to find unconscionability in contracts between sophisticated business persons." *Reserves Mgmt., LLC*, *supra*, 2014 Del LEXIS 90, 86 A.3d 1119, fn64, *citing Farnsworth on Contracts* §4.28 (2d ed. 2000)("bargaining power will rarely be equal").

---

[4] *See Graham v. State Farm Mut. Auto Inc., Co.*, 565 A.2d 908, 912 (Del. 1989).

Here, the counterclaims do not sufficiently allege facts to plead that the agreements here at issue were unconscionable, and there is nothing in the writings themselves that could reasonably lead to any adverse inference. In fact, virtually identical Securities Purchase Agreements have been sustained in EMA's favor and claims of unconscionability have been rejected. *See EMA Fin. v 5Barz Intl.*, 2019 U.S. Dist. LEXIS 230418, at *19 (S.D.N.Y. Sep. 18, 2019)(dismissing claim that identical convertible note was "unconscionable"); *See also LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist. LEXIS 126991, at *38 (E.D.N.Y. July 29, 2019) (dismissing claim of unconscionability in connection with similar convertible note). This is not an unresolved factual issue that would require discovery. It should be resolved in EMA's favor. The second counterclaim should be dismissed.

    **C.**    **The Third and Fourth Counterclaims Should Be Dismissed**

Defendant's opposition does not address the arguments proffered by EMA in support of dismissing the third counterclaim. Thus, plaintiff refers the Court to its opening brief. Moreover, defendant failed even to plead the elements of unjust enrichment. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471 (2011); *Nakamura v. Fujii*, 253 AD2d 387, 390, 677 N.Y.S.2d 113 (1st Dep't 1998). Because the other counterclaim should be dismissed, defendant cannot sustain its counterclaim for attorneys' fees.

## POINT II.

### THE AFFIRMATIVE DEFENSES ARE NOT "WELL PLED" AND SHOULD BE STRICKEN IN THEIR ENTIRETY

Under Rule 12(f), a court "may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Although some courts disfavor motions to strike affirmative defenses, primarily when such is the only relief sought, courts should grant these motions when the defenses presented are clearly insufficient, and because they serve a useful purpose of saving time and expense. *See United States v. Grimmel Indus., LLC*,

9

2018 U.S. Dist. LEXIS 131455, *2 (N.D.N.Y. Aug. 6, 2018)[citation omitted]; *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 2004 U.S. Dist. LEXIS 5136, *3 (S.D.N.Y. Apr. 4, 2004).

The first, fourth[5] and sixth affirmative defenses should be stricken for the reasons that the first and second causes of action should be dismissed. As a matter of both fact and law, EMA's claims are not barred and defendant has not properly pled entitlement to rescission either under the Exchange Act or based on the doctrine of unconscionability. The second affirmative defense must be stricken because the pleading of viable causes of action is undisputed.

The third affirmative defense asserts a variety of defenses. Defendant has not amplified its insufficient and conclusory allegations or submitted any evidence that EMA has waived any claims or rights, that it is estopped from seeking the relief sought in the complaint or that the entire debt obligation owed has been satisfied. If this were the case, then defendant would have moved to dismiss and supported it with documentary proof. For this reason, the fifth affirmative defense also should be stricken. Moreover, full repayment of the loan and/or accord and satisfaction are defenses, not affirmative defenses. The same is true with the eighth affirmative defense.

Finally, the seventh affirmative defense asserting that plaintiff's claims are barred by applicable usury laws is factually unsupported. In fact, as a matter of well-settled law, the value of conversion price discounts; a requirement of share reserves; and default provisions do not and cannot render the Note usurious. *See EMA Fin., LLC v AIM Exploration, Inc*., 2019 U.S. Dist. LEXIS 26141 (S.D.N.Y. Feb. 19, 2019); Blue Citi, LLC v. 5Barz Int'l Inc., 338 F. Supp. 3d 326 (S.D.N.Y. 2018); LG Capital Funding, LLC v. Aim Exploration, Inc., *supra*, 2018 U.S. Dist. LEXIS 147411. Each and every affirmative defense should be stricken in its entirety. *See Aspex Eyewear, Inc. v Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008).

---

[5] The fourth affirmative defense is also easily dismissible because EMA does not seek to enforce any portion of the liquated damages provision.

## **CONCLUSION**

For the foregoing reasons, and the reasons articulated in the initial moving papers, it is respectfully requested that this Court dismiss with prejudice defendant's counterclaims; that it strike the affirmative defenses in their entirety; and that it grant such other and further relief as it deems just and proper.

Dated: New York, New York
      March 15, 2021  Respectfully Submitted,

LAW OFFICE OF JEFFREY FLEISCHMANN PC

By: /s/Jeffrey Fleischmann
      Jeffrey Fleischmann, Esq.
*Attorneys for Plaintiff EMA Financial, LLC*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com