UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EMA FINANCIAL, LLC, a Delaware           Docket No. 20-cv-08781-VSB
Limited Liability Company,

                       Plaintiff,
                                            **RESPONSE TO**
                                            **RULE 56.1 STATEMENT**

-against-

TPT GLOBAL TECH, INC., a Florida Corporation,

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

      Defendant TPT Global Tech, Inc. ("TPT") respectfully submits this response to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Plaintiff's Statement") which was filed in support of its Motion for Summary Judgment.

GENERAL OBJECTION

      Local Rule 56.1(a) requires that a motion for summary judgment must have annexed to the notice of motion a short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.

      Plaintiff's statement does not conform to the rule in that it makes factual statements that it knows are in dispute and are not supported by the record and must be tried.

Further, it included legal conclusions in its statement, and references documents which do not exist.

## RESPONSES TO RULE 56.1 STATEMENT

1. On or about June 11, 2019, after arm's-length negotiations, TPT executed a Securities Purchase Agreement (the "SPA") and issued a Convertible Note to EMA (the "Note") in the amount of $250,000. (Complaint, ¶13). See Preston Dec. ¶ 2

Response: TPT disputes the date the agreements were executed and the statement that each term set forth in the underlying documents was independently negotiated by the parties. This was not an arm's-length negotiation. The form documents were provided with a take-it- or-leave-it approach from Plaintiff. There was little room for negotiations. Declaration of Stephen Thomas, ¶10 ("Thomas Dec.").

2. Although the face value of the Note is $250,000, as set forth in the Note, defendant received the sum of $235,000.00 in total proceeds. See Preston Dec. ¶ 3. A true and correct copy of the Note is attached to the Preston Dec. as Exhibit A. A true and correct copy of the SPA is annexed to the Preston Dec. as Exhibit B.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms.

3. Page 1 of the Note provides that the Company must repay the unpaid interest and principal balance of the Note by June 11, 2020. See Ex. A.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, and disputes the statement as there is no Exhibit A to the Rule 56.1 Statement.

4. Section 1.1 of the Note provides that EMA, at any time after the Issue Date of the Note, has the right to convert all or part of the Note into shares of TPT common stock (the "Common Stock"). Likewise, 1.4(a) of the Note provides that: "Subject to Section 1.1, this Note may be converted by the Holder in whole or in part at any time and from time to time after the Issue Date, by submitting to the Borrower a Notice of Conversion…" See Ex. A.

5

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, its interpretation of the language of the note and disputes the statement as the Rule 56.1 Statement does not contain an Ex. A.

    5.    Further, under §1.4(d) of the Note: "Upon receipt by the Borrower from the Holder of a facsimile transmission or e-mail (or other reasonable means of communication) of a Notice of Conversion …the Borrower shall issue and deliver or cause to be issued and delivered to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within one business day after such receipt…" See Ex. A.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, and disputes the statement as the Rule 56.1 Statement does not contain an Ex. A.

    6.    In order to ensure that sufficient shares would be available for conversion, §1.3 of the Note provides that the Borrower "will at all times while this Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion or adjustment of this Note." See Ex. A.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, its interpretation of the language of the note, the reasons for the referenced provision and disputes the statement as the Rule 56.1 Statement does not contain an Ex. A.

    7.    Section 5 of the Note set forth defendants' obligations required to be satisfied in order to ensure that EMA, at all times, had shares reserved. Further, §4(e) of the SPA requires that the Company maintain its listing on the OTC Markets and remain current in its reporting obligations. See Ex. A.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, its interpretation of the language of the note and the implied assertion that TPT did not maintain its listing on the OTC Markets and that it was not current in its reporting obligations and disputes the statement as the Rule 56.1 Statement does not contain an Ex. A. See Thomas Dec. ¶ 18.

8. Moreover, Section 3.19 of the Note provides for consequences in the event that defendant failed to file a registration statement covering the Holder's resale at prevailing market prices (and not fixed prices) of all of the Common Stock (the "Registration Statement") underlying the Note and Common Stock underlying the Note and Warrant…" See Ex. A.

Response: While TPT does not dispute the terms of the Note, it disputes Plaintiff's recitation of those terms, its interpretation of the language of the note and disputes the statement as the Rule 56.1 Statement does not contain an Ex. A.

9. Despite its obligation to do so, TPT failed to register EMA's shares within 45 days of the issue date, as required by the Note and SPA. See Preston Dec. ¶ 10.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders.

10. Moreover, in further violation of the terms of the Note and SPA, defendant was not Rule 144 eligible within 6 months of the issue date, and defendant also violated the terms of the Note and SPA by failing to maintain a reserve of shares, despite EMA's request, as of November21, 2019. See Preston Dec. ¶ 11.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders. Additionally, Plaintiff's attorney has admitted in correspondence that TPT was in compliance with its reporting requirements. TPT was always in compliance with the terms of Rule 144 and maintained the number of shares that EMA requested it reserve. Thomas Dec. ¶¶ 18-19.

11. On July 17, 2020, EMA submitted a notice of conversion, seeking to convert the Note into 216,950,627 shares of TPT stock. However, TPT failed to deliver the shares of stock by the one-day deadline provided in the relevant agreements. See Preston Dec. ¶ 12.

Response. TPT objects to the interpretation of the Note, and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders. Further, by July 17, 2020 EMA had breached the underlying agreements and the dispute underlying this action existed, with no reason for TPT to continue to maintain a reserve.

> 12. On or about June 11, 2020, the Note matured, but TPT failed to pay or otherwise satisfy the terms of the Note. Thus, on or about September 17, 2020, EMA issued a notice of default to TPTW. See Preston Dec. ¶ 13. Section 3.2 of the Note provides for a breach in the event that:

> The Borrower fails to issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligation to do so at any time following the execution hereof or) upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent in transferring (or issuing) (electronically or in certificated form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent not to remove or impairs, delays, and/or hinders its transfer agent from removing) any restrictive legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement, statement or threat that it does not intend to honor the obligations described in this paragraph)… It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered or frustrated due to a balance owed by the Borrower to its transfer agent…

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders. TPT further avers that by

5

virtue of the conversions and sale of the securities, EMA received full value for its note. Thomas Dec. ¶ 16-17

13. Likewise, Section 5 of the SPA provides that:

> Upon receipt of a duly executed Notice of Conversion, the Company shall issue irrevocable instructions to its transfer agent to issue certificates, registered in the name of the Purchaser or its nominee, for the Conversion Shares in such amountsas specified from time to time by the Purchaser to the Company upon conversion of the Note, or any part thereof, in accordance with the terms thereof (the"Irrevocable Transfer Agent Instructions"). In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement, a fully executed irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve sharesof Common Stock in the Reserved Amount (as defined in the Note)) signed by thesuccessor transfer agent to Company and the Company.

Response: TPT objects to the interpretation of the Note, and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders,

14. TPT failed to pay the Note upon maturity. See Preston Dec. ¶ 15. Section 3.3 and 3.4 of the Note further provide for an event of default for each breach of a covenant, representation, or warranty made by TPTW in connection with the Agreements. See Ex. A.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders, and on the grounds that there is no Exhibit A to the Rule 56.1 Statement. Further, EMA received more than the amount of the note and interest by virtue of its conversions of the debt to stock. Thomas Dec. ¶¶ 16-17.

15. Based on the foregoing events, TPT's failure to honor EMA's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" as defined in the Note.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders.

16. Section 8 of the Note identifies the negotiated-for and agreed-upon remedies for the differing Events of Default. Among other things, EMA is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law. Page 1 of the Note provides that: "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid ("Default Interest")." See Ex. A.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders, In addition, there is no exhibit A to the Rule 56.1 statement.

17. Due to TPT's persistent and willful failure to remedy its various breaches, as of Plaintiff's filing the instant action, default interest has been accruing at a rate of 24%. See Preston Dec. ¶ 18, See, Ex. A.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, its claims of "persistent and willful failure" by TPT as well as the fact that EMA was in breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders. In addition, there is no Exhibit A to the Rule 56.1 Statement.

18. Section 3.16 of the Note provides that, in the event of default, "all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity." See Ex. A to the Preston Dec.

Response: TPT objects to the interpretation of the Note and avers that the Note and SPA are void since EMA is an unregistered dealer, and in addition by its breach of the Note and SPA by misrepresenting its investment purpose, and in immediately converting the liquidating shares, to the detriment of TPT and its shareholders.

Dated: April 30, 2021                              SALLAH ASTARITA & COX, LLC

By: _____
Mark J. Astarita
*Attorneys for Defendant*
60 Pompton Avenue
Verona, New Jersey 07044
973-559-5566
mja@sallahlaw.com