UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EMA FINANCIAL, LLC, a Delaware Limited Liability Company,

     Plaintiff,

  - against -

TPT GLOBAL TECH, INC., a Florida Corporation,

     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

: Case No. 20-cv-08781-VSB
:
:
:
:
:
:
:
:
:
:
:

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION, PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE RULE 56
<u>FOR SUMMARY JUDGMENT</u>**

Dated: New York, New York
  May 14, 2021

      LAW OFFICE OF JEFFREY FLEISCHMANN PC

      *Attorneys for EMA Financial, LLC*

      150 Broadway, Suite 900
      New York, New York  10038
      Tel. (646) 657-9623
      Fax (646) 351-0694
      jf@lawjf.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1-2

ARGUMENT ............................................................................................... 2-15

A.   The Court Should Deem the Contents of the Rule 56.1 Statement Admitted as
     Vystar Fails to Support its Responses with Citations to Admissible Evidence .. 2-3

B.   Summary Judgment is Appropriate and Not Premature ..................................... 3-5

C.   The Agreements Executed by Defendant Are Enforceable .............................. 5-15

     a.   EMA Is Not A Broker-Dealer .......................................................... 5-10

     b.   The Note and SPA Are Enforceable ................................................ 10-11

     c.   Defendant was Not Rule 144 Eligible at the Six-Month Mark ............. 11

     d.   The Note and SPA are Not Unconscionable Agreements ............... 12-13

     e.   Plaintiff is Entitled to Attorneys' Fees ............................................ 13-15

CONCLUSION ............................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*74 Watt v. New York Botanical Garden,* No. 98 Civ. 1095(BSJ), 2000 WL 193626 (S.D.N.Y. Feb. 16, 2000)..........................................................................................................2

*Adar Bays, LLC v. GeneSYS ID, Inc,* 341 F Supp 3d 339 [SDNY 2018].....................13

*Ali v. City of New York*, No. 11 Civ. 5469(LAK), 2012 U.S. Dist. LEXIS 126233, 2012 WL 3958154 (S.D.N.Y. Sept. 5, 2012) ............................................................................4

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ...........3

*Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 12-cv-6075, 2013 U.S. Dist. LEXIS 43545 (S.D.N.Y. Mar. 22, 2013)..............................................................................................9

*Blue Citi, LLC, v 5barz International Inc.,* 16-CV-9027 (VEC), 2018 WL 4500870 [SDNY Sept. 19, 2018].......................................................................................................................14

*Buckman v. Calyon Sec*s., 817 F.Supp.2d 322 (S.D.N.Y.2011) ......................................3

*Busher v. Barry*, No. 14-cv-4322 (NSR), 2016 U.S. Dist. LEXIS (S.D.N.Y. Mar. 28, 2016). 4, 12

*Carco Group, Inc. v. Maconachy,* No. CV 05–6038, 2011 WL 6012426 (E.D.N.Y. Dec. 1, 2011) ....................................................................................................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 L. Ed. 2d 265 S. Ct. 2548 (1986) ....................3

*Conn. Nat.'l Bank v. Trans World Airlines, Inc*., 762 F. Supp. 76 (S.D.N.Y. 1991).....................4

*Costello v. N.Y. State Nurses Ass'n,* 783 F.Supp.2d 656 (S.D.N.Y.2011) ......................3

*Couldock & Bohan, Inc. v. Societe Generale Secs. Corp*., 93 F. Supp. 2d 220 (D. Conn. 2000)  10

*DePaola v. City of New York*, No. 13 Civ. 315(KBF), 2013 U.S. Dist. LEXIS 149306, 2013 WL 5597465  (S.D.N.Y. Oct. 9, 2013)...............................................................................5

*Dervan v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 28551 (S.D.N.Y. 2017) ....................6

*Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357 (5th Cir.) (1968)........8

*EMA Fin., LLC v Joey NY, Inc*., 2019 US Dist LEXIS 161454 [SDNY Sep. 22, 2019, No. 17-CV-9706 (VSB)] .....................................................................................................12, 13

*EMA Fin., LLC v. AIM Exploration,* Inc., 2019 US Dist LEXIS 26141 [SDNY Feb. 19, 2019]. 13

*Ema Fin., LLC v. Vystar Corp.*, 2020 US Dist LEXIS 149778 [SDNY Aug. 18, 2020]) ........ 6, 11

*Frati v. Saltzstein*, No. 10 Civ. 3255, 2011 U.S. Dist. LEXIS 25567 (S.D.N.Y. Mar. 14, 2011) .. 6

*In the Matter of Gordon Wesley Sodorff, Jr.*, Release No. 31134, 1992 WL 224082 (Sept. 2, 1992)................................................................................................................................. 8

*Klein v. Experian Info. Sols., Inc.*, 2020 U.S. Dist. LEXIS 201942 (S.D.N.Y. 2020) ................ 12

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986).................................................................. 3

*LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540 (S.D.N.Y. Sep. 28, 2018).................................................................................................................. 5, 6

*LG Capital Funding, LLC v. PositiveID Corp.,* U.S. Dist. LEXIS 126991 (E.D.N.Y. July 29, 2019)............................................................................................................................... 13

*Liberty Lobby*, 477 U.S. 242, 91 L. Ed. 2d 202 S. Ct. 2505 ......................................................... 3

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 709 F. Supp. 438 (S.D.N.Y. 1989) ......... 3, 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 S. Ct. 1348 L. Ed. 2d 538 (1986) .............................................................................................................................. 4

*National Council of Savings and Loans,* SEC No-Action Letter, 1986 SEC No-Act LEXIS 2609 (July 27, 1986)................................................................................................................. 7

*NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168 (2d Cir.2008) ................... 14

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ................................................... 4

*Ragone v. Atl Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010)......................................... 12

*Ray v. Samsung Elecs. Am. Inc.*, 2016 U.S. Dist. LEXIS 79260 (S.D.N.Y. 2016) ..................... 12

*Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir.1982) ......................................................................................................................... 10

*Rivera v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 479 (S.D.N.Y.1993) ....................................... 2

*SEC v.  River North Equity LLC, et al.*, 415 F. Supp. 3d 853 (N.D. Ill. 2019).............................. 8

*SEC v. Hansen*, No. 83 Civ. 3692, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984)......... 9

*Senno v. Elmsford Blue Citi Free Sch. Dist.*, 812 F.Supp.2d 454 n. 1 (S.D.N.Y.2011) ................ 3

*Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676 (S.D.N.Y. 1984) ............................................ 10

*Sprinzen v. Nomberg*, 46 N.Y.2d 623, N.E.2d 456, N.Y.S.2d 974 [1979] ...................................... 9

*Tulger Contracting Corp. v. Star Bldg. Sys., Inc.,* No. 01-CV-6853, 2002 U.S. Dist. LEXIS 8620, 2002 WL 986994 (S.D.N.Y. May 14, 2002)................................................................................. 13

*Union Capital LLC v 5Barz International Inc.*, 16-cv-06203-KBF ............................................ 3

*Union Capital LLC v. Vape Holdings Inc.*, 2017 US Dist LEXIS 60445 [SDNY Mar. 31, 2017] ................................................................................................................................................ 13

*United States SEC v. Riv. N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019) ......................... 9

*Whelehan v. Bank of Am.*, 621 F. App'x 70 (2d Cir. 2015)........................................................ 4

*Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42 (2d Cir.1985)............................ 2

## Statutes

15 U.S.C §78c(a)(5)(A) ............................................................................................................... 6

15 U.S.C. § 78cc(b)..................................................................................................................... 1

15 U.S.C. § 78o(a)(1).................................................................................................................. 5

Section 15.................................................................................................................................. 10

Section 15(a)(1) ................................................................................................................. 1, 5, 7, 9

Section 29(b).............................................................................................................................. 10

Section 29(b)(1) ........................................................................................................................... 1

## Rules

Fed.R.Civ.P. 56(e). ................................................................................................................. 2, 3

Federal Rules of Civil Procedure Rule 12 and Rule 56 ........................................................ 1, 15

Local Rule 56.1 ...................................................................................................................... 2, 3

Local Rule 56.1(d) ...................................................................................................................... 2

Rule 144 .................................................................................................................................... 11

Rule 56(d) ......................................................................................................................... 4, 5, 12

Rule 56.1 ........................................................................................................................ 2, 3, 13

Rule 9(g) ................................................................................................................................. 2

Plaintiff EMA Financial, LLC ("Plaintiff" or "EMA"), respectfully submits this reply memorandum of law in further support of its motion for summary judgment against Defendant TPT Global Tech, Inc. ("Defendant" or "TPTW") a Florida Corporation, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is an action arising as the result of Defendant's conduct in connection with certain agreements to purchase securities and related convertible note agreements.  After entering into negotiated, arms-length agreements, TPT refused to honor Plaintiff's notices of conversion, which directed that TPT convert the outstanding note into shares—notwithstanding its contractual obligations to do so.

Plaintiff has timely brought the instant motion for summary judgment seeking recovery from Defendant for its breach of the agreements between the parties.  However, in a desperate attempt to avoid the consequences of the agreements Defendant executed, Defendant alleges that any securities transactions Plaintiff entered into with Defendant are void under Section 29(b)(1) 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78cc(b). Defendant's position is both misleading and wrong, and Defendant cannot successfully oppose a motion for summary judgment by relying on mere speculation or conjecture as to the true nature of the facts. As will be demonstrated below, the direct legal authority on this topic holds that whether or not EMA is required to register as a dealer, the relevant agreements are still fully enforceable. Defendant has not identified any provision in either the Note or the SPA that requires EMA to register as a broker Moreover, EMA does not fall under the definition of a broker-dealer, but is instead a trader.

Lastly, rather than deny its numerous breaches, including its refusal to honor Plaintiff's notices of conversion, which directed that TPT convert the outstanding note into shares upon due and proper demand failure to establish and increase the share reserve as required by the parties'

agreements, and failure to register EMA's shares, Defendant grasps at straws to allege that the agreements it executed were unconscionable. However, Defendant does not present any evidence that would demonstrate that the agreement is unconscionable, nor does Defendant assert any measures it had taken to demonstrate that the agreements should be voided.

For the foregoing reasons, and as demonstrated below, Plaintiff's motion should be granted in its entirety.

## <u>ARGUMENT</u>

**A. The Court Should Deem the Contents of the Rule 56.1 Statement Admitted as Vystar Fails to Support its Responses with Citations to Admissible Evidence.**

Local Rule 56.1(d) provides that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" as required by Fed.R.Civ.P. 56(e). Interpreting the predecessor to the current Local Rule 56.1, the Second Circuit held that "[a] Rule 9(g) statement by counsel on a motion for summary judgment cannot be a substitute for an affidavit as to the facts." *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 47 (2d Cir.1985). Likewise, district courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that "where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *74 Watt v. New York Botanical Garden,* No. 98 Civ. 1095(BSJ), 2000 WL 193626, at *1 n. 1 (S.D.N.Y. Feb. 16, 2000); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 479, 484 (S.D.N.Y.1993) (Allowing a Local Rule 56.1 statement to substitute for the admissibility requirement set forth in Fed.R.Civ.P. 56(e) "would be tantamount to the tail wagging the dog.")

While Defendant submits a Response to Rule 56.1 Statement, it does so without a single citation to admissible evidence which refutes Plaintiff's Rule 56.1 Statement. This is tantamount to an admission, and leads to the inescapable conclusion that Defendant did not cite to admissible evidence in its 56.1 response not because of a lack of familiarity with the Court rules, but simply because there

is no defense whatsoever to this action. *See Costello v. N.Y. State Nurses Ass'n,* 783 F.Supp.2d 656, 661 n. 5 (S.D.N.Y.2011) (disregarding plaintiff's responses to defendant's Rule 56.1 statement where plaintiff failed to refer to evidence in the record and failed to specifically dispute defendant's statements); *Senno v. Elmsford Blue Citi Free Sch. Dist.*, 812 F.Supp.2d 454, 458 n. 1 (S.D.N.Y.2011) (Responses which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact); *Buckman v. Calyon Sec*s., 817 F.Supp.2d 322, 328 n. 42 (S.D.N.Y.2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Union Capital LLC v 5Barz International Inc*., 16-cv-06203-KBF, Docket Entry. No. 54, p.3 (Granting summary judgment against BARZ because "defendant fails to provide citations to admissible evidence in its response to plaintiff's Rule 56.1 statement, including for this statement, which renders its response deficient and tantamount to an admission under Local Rule 56.1 and Federal Rule of Civil Procedure 56(e).")

### B.  <u>Summary Judgment is Appropriate and Not Premature</u>

The standard for a summary judgment motion is well established: the nonmoving party must demonstrate that there exists a genuine issue of material fact in order to defeat a summary judgment motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

A defendant may not defeat a summary judgment motion merely by making far-reaching allegations that are not grounded in fact. See *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 94 L. Ed. 2d 762, 107 S. Ct. 1570 (1987); *Liberty Lobby*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505. Those issues that are genuine are those which "have a real basis in the record before the court, and most significantly, must be 'material to the outcome of the litigation.'" *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc*., 709 F. Supp. 438, 442 (S.D.N.Y. 1989) (quoting *Knight*, 804 F.2d at 11, citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). To be material, "the disputed issues must implicate cognizable legal principles upon which recovery may be had." Id.

As will be demonstrated below, Defendant has attempted to do exactly what the summary judgment rules are designed to protect against: "show that there is some metaphysical doubt as to the material facts," (*Matsushita*, 475 U.S. at 586) "relying on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight*, 804 F.2d at 12.

Moreover, contrary to Defendant's contentions, Plaintiff's motion for summary judgment is not premature. A motion for summary judgment prior to discovery is by no means a prohibition on the entry of judgment. See, *Conn. Nat.'l Bank v. Trans World Airlines, Inc*., 762 F. Supp. 76, 79 (S.D.N.Y. 1991). "In appropriate circumstances, summary judgment may be granted prior to discovery." *Ali v. City of New York*, No. 11 Civ. 5469(LAK), 2012 U.S. Dist. LEXIS 126233, 2012 WL 3958154, at *3 n.10 (S.D.N.Y. Sept. 5, 2012).

Defendant's statement that it requires discovery to utilize in opposition to the instant action is baseless. Rule 56(d) requires "submitting an affidavit that includes 'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'" *Whelehan v. Bank of Am*., 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (applying earlier and substantially similar version of the Rule). Rule 56(d). "[C]onclusory allegations of incomplete discovery" do not meet the requirements of Rule 56(d). *Busher v. Barry*, No. 14-cv-4322 (NSR), 2016 U.S. Dist. LEXIS (S.D.N.Y. Mar. 28, 2016) (considering a motion for summary judgment before formal discovery had been conducted because Plaintiff's declaration listed the issues on which discovery was sought, but did not "explain who would be deposed, how the facts

4

sought would create an issue of material fact, or what efforts have been made thus far to obtain information on the listed issues"); *see also DePaola v. City of New York*, No. 13 Civ. 315(KBF), 2013 U.S. Dist. LEXIS 149306, 2013 WL 5597465, at *5 (S.D.N.Y. Oct. 9, 2013) (granting summary judgment and denying a request for additional discovery because "general descriptions of the broad categories of discovery plaintiff would like to propound provide[] an insufficient basis under Rule 56(d)"), aff'd, 586 F. App'x 70 (2d Cir. 2014). Defendant's counsel's affidavit fails to explain any reasonable efforts to obtain the information and discovery items he asserts is necessary to oppose Plaintiff's motion or why, if at all, he was unsuccessful in those efforts. As Defendant's counsel's affidavit fails to meet the requirements of Rule 56(d), Defendant's requests for discovery is inappropriate and should be disregarded.

### C. <u>The Agreements Executed by Defendant Are Enforceable</u>

#### a. **EMA Is Not A Broker-Dealer**

Defendant alleges in essence that EMA violated securities laws by failing to register as a broker dealer. However, EMA's registration as a broker dealer has no bearing on the performance of the agreements. Indeed, this exact argument has already been rejected by courts in identical convertible note situations. *See LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 U.S. Dist. LEXIS 202540, at *15-16 (S.D.N.Y. Sep. 28, 2018)] ("ExeLED's tenth and eleventh affirmative defenses, which assert that LG's suit is barred and that the contracts-in-suit are void because LG failed to register as a "dealer" (as the term is defined in Section 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1)) . . . also fail. . . . the Court can only conclude that the Contracts were still capable of performance even if LG failed to register as a dealer. Put another way, the Note and the SPA are not voidable 'unlawful contracts,' . . . . Accordingly, ExeLED's tenth and eleventh affirmative defenses fail as a matter of law, and the

Court concludes that the first element of LG's breach of contract claim — the existence of a valid contract — is met.")

Glaringly, Defendant has not identified any provision in either the Note or the SPA that requires EMA to register as a broker, a link that is essential for the prosecution of violations of the Act in the Southern District of New York. *See*, *LG Capital Funding, LLC v. ExeLED Holdings, Inc*., No. 17 Civ. 4006, 2018 U.S. Dist. LEXIS 202540 (S.D.N.Y. Sept. 28, 2018) (finding that "even if [plaintiff] should have registered, nothing in the Note or the SPA indicates that those contracts 'could not have been legally performed' because [plaintiff] failed to do so."); *EMA Fin., LLC v. Vystar Corp*., 336 F.R.D. 75, 81 (S.D.N.Y. 2020) ("The flaw in [defendant's] argument, however, is that it does not identify a provision in the contracts that obligates [EMA] to act as a broker-dealer."); *Dervan v. Gordian Grp.*, 2017 U.S. Dist. LEXIS 28551, at 26 (S.D.N.Y. 2017) ("The Agreement itself does not on its face require Dervan, concededly an unregistered individual, to act as a "broker" or "dealer."); *Frati v. Saltzstein*, No. 10 Civ. 3255, 2011 U.S. Dist. LEXIS 25567 (S.D.N.Y. Mar. 14, 2011) ("[t]here is . . . no reason to believe that the contracts themselves could not be legally performed—a fact which is fatal to Plaintiff's claim").

Based on years of SEC guidance, EMA does not fall under the definition of a broker dealer, but is instead a trader.  Pursuant to Section 3(a)(5)(A) of the United States Code, "[t]he term 'dealer' means any person engaged  in the business of buying and selling securities . . . for such person's own account through a broker or otherwise."  15 U.S.C §78c(a)(5)(A).  If read broadly, the reach of this Section would extend well beyond the legislative intent.  Therefore, the SEC has offered guidance to delineate between those that qualify as dealers and those that do not, and are instead defined as traders.  A "trader" is a party that buys and sells securities for its own accounts, but does not fall within the definition of a dealer and is not required to register with the SEC.  *See,*

6

*e.g., National Council of Savings and Loans,* SEC No-Action Letter, 1986 SEC No-Act LEXIS 2609 (July 27, 1986) at 4.

A number of factors are considered when determining whether a party is a dealer or a trader.  First, a dealer buys and sells securities as a part of regular business.  *Id*. at 2.  Second, a dealer contemporaneously and continuously buys and sells securities on the market.  *Id*. at 4. Third, a dealer handles other people's money or securities and invests on their behalf.  *Id.*  Fourth, a dealer makes a market in securities.  *Id*. at 2.  Fifth, a dealer buys and sells securities on behalf of a regular clientele.  *Id.* at 10.  Sixth, a dealer renders investment advice or individuals employ the party to earn a return on their behalf.  *Id*. at 11.  Without meeting any of these criteria, the SEC would not require registration as a dealer.

Indeed, in 2002, the SEC acknowledged, and added to these factors, proposing codification thereof, stating:

> As developed over the years, the dealer/trader distinction recognizes that dealers normally have a regular clientele, hold themselves out as buying or selling securities at a regular place of business, have a regular turnover of business (or participate in the distribution of new issues), and generally transact a substantial portion of their business with investors (or, in the case of dealers who are market makers, principally trade with other professionals). In contrast, traders have a less regular volume, do not handle others' money or securities, do not make a market, and do not furnish dealer-type services such as rendering investment advice, extending or arranging for credit, or lending securities.

> *Id.*

Each of these factors, paired with the fact that the SEC is, and has been, undoubtedly aware of Plaintiff's industry for decades, favors a finding that Plaintiff is in fact a trader, exempt from the registration requirement of Section 15(a)(1).

Firstly, Plaintiff's regular business is financing companies in exchange for convertible debt, not buying and selling securities. Second, while Plaintiff does sell securities when the

convertible debt is repaid in stock, it is not alleged that it is contemporaneously buying and selling securities for investment purposes. Third, there is no allegation that Plaintiff handles other people's money or securities to invest on their behalf.  Fourth, there is no allegation that Plaintiff makes a market for securities. The SEC defines a "market maker" as "a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price." Rather, the allegations are that Plaintiff acquires stock through the repayment of convertible debt, and sells the stock at the publicly quoted price.  Fifth, there is no allegation that Plaintiff buys and sells stock on behalf of any person or entity but itself, let alone a regular clientele.  Finally, there is no allegation that Plaintiff renders any investment advice, only that it sells stock on the open market that it acquired through convertible debt. Therefore, it is clear that Plaintiff's sale of stock acquired through convertible debt does not fall within the purview of the SEC's definition and guidance as to what constitutes a dealer.

Defendant focuses on the proposition that someone that buys and sells securities as part of their regular business is a "dealer." Notably, the numerous cases[1] cited by Defendant for this proposition do not involve convertible notes, with the exception of a case in Illinois, *SEC v. River North Equity LLC, et al.*, 415 F. Supp. 3d 853 (N.D. Ill. 2019), which Defendant itself distinguishes by noting it involved an allegation that the defendant had sold over ten billion shares of newly issued shares of stock from 62 microcap issuers, a number far larger than Defendant's allegations of EMA holding three billion shares of stock for 13 different public companies.  Indeed, the Court in *River North* noted that:

---

[1] Indeed, the case of *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357 (5th Cir.), *Dec. denied*, 393 U.S. 913, 89 S.Ct. 234, 21 L.Ed.2d 198 (1968) cited by Defendant involved church bonds, which are not analogous to convertible notes. Another case, *In the Matter of Gordon Wesley Sodorff, Jr.*, Release No. 31134, 1992 WL 224082, at *4-5 (Sept. 2, 1992) involved a salesman of a member firm of the National Association of Securities Dealers, Inc. engaged in private securities transactions. This case is further distinguishable as it involves an individual selling securities, as opposed to a business entity like EMA.

> The SEC alleges that during the relevant period River North bought and sold over 10 billion shares of stock from more than 62 microcap issuers, and then quickly resold them to the investing public, receiving some $31 million in profit. From this, it is more than plausible that River North meets the statutory "dealer" definition.

*See United States SEC v. Riv. N. Equity LLC*, 415 F. Supp. 3d 853, 857 (N.D. Ill. 2019).

Contrary to Defendant's contention, *River North* was not a simple convertible note whereby, (as here), the investor provides financing in exchange for the right to sell registered shares on the public market in the event that the Note is not paid off and is converted. Rather, *River North* alleges the completely opposite scenario where certain individuals obtained billions of newly issued, unregistered shares, privately sold them to a co-conspirator for a large discount, who, in turn, sold them in several unregistered transactions and kicked back some of the profits to the original sellers. *Id*.

Moreover, neither the Note nor the SPA specify any of the services EMA would perform, any of the activities in which it would engage, or even the types of transactions in which it would participate. See also *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 12-cv-6075, 2013 U.S. Dist. LEXIS 43545 (S.D.N.Y. Mar. 22, 2013) ("To find a contract unenforceable for illegality at the pleading stage, the question is whether the contract 'on its face' requires the unregistered [person] to perform broker services.") (citing *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 631-32, 389 N.E.2d 456, 459-60, 415 N.Y.S.2d 974, 978-79 [1979]). Nor does either the Note or the SPA provide that an employee of EMA will receive a commission, as opposed to a salary. See, *SEC v. Hansen*, No. 83 Civ. 3692, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984) (holding that defendant acted as an unregistered broker in violation of section 15(a)(1) where he was paid commission, rather than a salary, previously sold securities of another issuer, actively and aggressively found investors, and frequently gave those investors extensive advice regarding the merits of investments).

**b.  The Note and SPA Are Enforceable**

Defendant's claims that the Note and SPA are voidable and unenforceable are unfounded. To push its unsupported agenda, Defendant relies on the cases *Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir.1982) and *Couldock & Bohan, Inc. v. Societe Generale Secs. Corp.*, 93 F. Supp. 2d 220, 231-32 (D. Conn. 2000) for the proposition that a party to an agreement where the contra-party acted as a broker-dealer could rescind the agreement pursuant to Section 29(b).

However, Defendant's reliance on *Couldock and Regional Properties, Inc.*, which is also cited within *Couldock*, is misplaced.  Neither of those cases involved a Note and SPA, and neither involved a situation where the contract could otherwise be legally performed.  Indeed, this is noted explicitly in *Regional Properties,* where the Court stated "[t]hat these contracts, under different circumstances, could have been performed without violating the Act is immaterial." *Id.* at 560. Under the circumstances cited by the Court, the relevant contract could *not* be performed without violating the Act.  That stands in stark contrast to our case, which did not require illegal performance.

Defendant also quotes to *Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676 (S.D.N.Y. 1984). However, *Slomiak* stands for the uncontroversial proposition that a contract that was a prohibited transaction or required performance that is prohibited is voidable, something that is not the case here.  Once again, the only conduct that is alleged to violate Section 15 is EMA's sale of the stock after conversion—but, there is nothing in the agreement that requires EMA to ever sell the stock— thus, there is nothing prohibited in either the terms of the agreement or in its performance. *See Ema Fin., LLC v. Vystar Corp.*, 2020 US Dist LEXIS 149778, at \*20 [SDNY Aug. 18, 2020]) ("Here, the Note and SPA required only that Ema provide Vystar with a loan and that Vystar allow

Ema to convert the balance into shares. The fact that Ema might have later sold its shares in violation of the broker-dealer provision is tangential to the contracts themselves.")

### c.   Defendant was Not Rule 144 Eligible at the Six-Month Mark

Defendant's allegation that EMA's agreements prohibited prepayment of the Loan is misleading.  Defendant states that TPT could not prepay the Note after the expiration of six months from the date of the Note.  Defendant notes that six months is the holding period under Rule 144, and alleges that the six-month mark was the date which Plaintiff intended to start converting shares. Defendant also alleges that Defendant was prevented from prepaying after the conversion period again.

Contrary to Defendant's statements however, although Defendant may have been reporting that they were holding securities pursuant to SEC requirement, Defendant was not Rule 144 eligible. Consequently, even if Defendant wanted to prepay the Note before the expiration of six months from the date of the Note, it could not.

Moreover, Defendant's unsupported claim that it was Rule 144 eligible is irrelevant in light of its failure to deny its numerous other breaches, including the failure to maintain a reserve of shares and the failure to honor conversion notices. Indeed, on November 21, 2019, Plaintiff informed Defendant by email that "It has come to our attention that there are no more shares available for reservation. As you are aware, it is one of Company's obligations under the Note to at all times maintain the required reserved amount of shares. Failure to do so is an Event of Default under Article III of the Note." See Exhibit 1 to the Preston Reply Dec.  As noted in Plaintiff's moving papers, and not denied by Defendant, Defendant has also refused to honor Plaintiff's notices of conversion, which directed that TPT convert the outstanding note into shares upon due and proper demand.  See Exhibit 2 to the Preston Reply Dec.

### d.   The Note and SPA are Not Unconscionable Agreements

11

A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability. *Ray v. Samsung Elecs. Am. Inc.*, 2016 U.S. Dist. LEXIS 79260 at * 12 (S.D.N.Y. 2016)(internal citation omitted); See also *Ragone v. Atl Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010)(to demonstrate unconscionability, " there must be a showing that … a contract is both procedurally and substantially unconscionable"). "The standard for proving that a contract provision is unconscionable is very high (that is, the provision or circumstances must shock the conscience)." *Klein v. Experian Info. Sols., Inc*., 2020 U.S. Dist. LEXIS 201942 (S.D.N.Y. 2020)(internal citations omitted).

Defendant fails to provide any evidence whatsoever demonstrating that the agreements it executed were unconscionable, either procedurally or substantively. Nor does Defendant explain what items of discovery would be needed to demonstrate that the agreements were unconscionable, only relying on a general proposition that discovery must be conducted.  As stated previously, Defendant's statement that it requires discovery that is necessary and material to utilize in opposition to the instant action is baseless. Defendant does not explain Defendant's counsel's efforts to obtain the information he asserts is necessary to oppose Plaintiff's motion or why he was unsuccessful in those efforts. "[C]onclusory allegations of incomplete discovery" do not meet the requirements of Rule 56(d).  *Busher v. Barry*,, 2016 U.S. Dist. LEXIS 41481, 2016 WL 1249612, at *4 (S.D.N.Y. 2016).

To EMA's knowledge, no Court in the Southern District has ever held that such scant allegations are sufficient to survive a summary judgment motion.  The opposite is true—numerous Court (including this one) have granted summary judgment based upon substantially identical agreements.  *EMA Fin., LLC v Joey NY, Inc*., 2019 US Dist LEXIS 161454, at *1 [SDNY Sep. 22, 2019, No. 17-CV-9706 (VSB)])(Granting pre-discovery motion for summary judgment on

identical note and SPA); *LG Capital Funding, LLC v. PositiveID Corp.,* U.S. Dist. LEXIS 126991, at *37 (E.D.N.Y. July 29, 2019) (granting summary judgment on unconscionability where "[plaintiff] cites to no evidence that speaks to the issue of unconscionability, nor are any of its Rule 56.1 statements identified as pertinent to the defense); *Union Capital LLC v. Vape Holdings Inc.*, 2017 US Dist LEXIS 60445, at *17 [SDNY Mar. 31, 2017])(Sullivan, J.) (Granting pre-discovery summary judgment on the issue of liability of substantially similar note); *Adar Bays, LLC v. GeneSYS ID, Inc*, 341 F Supp 3d 339, 350 [SDNY 2018] (granting summary judgment on similar note); *EMA Fin., LLC v. AIM Exploration,* Inc., 2019 US Dist LEXIS 26141, at *23-24 [SDNY Feb. 19, 2019] (granting summary judgment where agreement—nearly identical to the agreement here*)*

Given the failure to come forth with any proof whatsoever supporting its scant unconscionability allegations, the Court should grant summary judgment in EMA's favor. *See Tulger Contracting Corp. v. Star Bldg. Sys., Inc.,* No. 01-CV-6853, 2002 U.S. Dist. LEXIS 8620, 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) ("Plaintiff . . . argues that the above-quoted limitations are unconscionable as a matter of public policy. But in response to defendant's summary judgment motion, plaintiff has failed to adduce competent evidence sufficient to make this a jury question).

### e.  Plaintiff is Entitled to Attorneys' Fees

In accordance with the agreements between the parties, TPT agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by EMA in collecting any amount under the Note or breach of the Agreements. The Settlement Agreement provides at Section 10 that: "in any suit, action, or proceeding between or among the Parties seeking

enforcement of any terms of the provisions of this Agreement, the Purchase Agreement, and/or the Note shall be governed by Section 4.5 of the Note."

Section 4.5 of the Note states: "If default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees." Therefore, EMA is entitled to an award against TPT for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.  *See NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir.2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear").

As set forth in the Fleischmann Dec., EMA has incurred attorney's fees and costs of $18,952.40 through the date of the filing of this motion. Fleischmann Dec. ¶16.  Plaintiffs are being billed at an hourly rate of $400.00 per hour. Fleischmann Dec. ¶2-3. Plaintiff's counsel has approximately 12 years of experience, is admitted to the bar in New York and New Jersey, the Southern District of New York, the Eastern District of New York, and the United States Court of Appeals for the Second Circuit.  Fleischmann Dec. ¶14. A copy of the invoices for the work billed on this matter to date are annexed to the Fleischmann Dec. as Exhibit 3. These invoices were contemporaneously rendered and accurately reflect the amounts of work done on this matter. Fleischmann Dec. ¶11-12.

Plaintiff's counsel has submitted itemized copies of its invoices to Defendant, and Defendant cites no authority for its assertion that proof of payment is required for an award of attorneys' fees. This Court has already found Plaintiff's counsel's hourly rate to be reasonable. *See Blue Citi, LLC, v 5barz International Inc.,* 16-CV-9027 (VEC), 2018 WL 4500870, at *11 [SDNY Sept. 19, 2018].

Courts generally will "order the losing party to pay the amount actually incurred, so long as those amounts are reasonable." *Carco Group, Inc. v. Maconachy,* No. CV 05–6038, 2011 WL 6012426, at *2 (E.D.N.Y. Dec. 1, 2011). "Courts in this Circuit employ a 'presumptively reasonable fee' standard to determine the amount to award as attorneys' fees, which 'boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" *Id* at *2.

Consequently, Plaintiff's corresponding request for attorneys' fees should be granted.

## **CONCLUSION**

For the foregoing reasons, and the reasons articulated in the initial moving papers, it is respectfully requested that this Court grant Plaintiff's motion pursuant to Federal Rules of Civil Procedure Rule 56, for summary judgment against defendant Vystar Corp., and that it grant such other and further relief as it deems just and proper.

Dated: New York, New York
May 14, 2021

Respectfully Submitted,

LAW OFFICE OF JEFFREY FLEISCHMANN PC

By: /s/ Jeffrey Fleischmann
Jeffrey Fleischmann, Esq.
*Attorneys for Plaintiff EMA Financial, LLC*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com