UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :
EMA FINANCIAL                                            :
                                                         :
                              Plaintiff,                 :
                                                         :                    20-CV-8781 (VSB)
                - against -                              :
                                                         :                   **OPINION & ORDER**
                                                         :
TPT GLOBAL TECH, INC.                                    :
                                                         :
                              Defendant.                 :
                                                         :
---------------------------------------------------------X

Appearances:

Jeffrey Fleischmann
Jeffrey Fleischmann PLLC
New York, NY 10038
*Counsel for Plaintiff*

Mark J. Astarita
Sallah Astarita & Cox LLC
New Jersey, NJ 07044
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me are Plaintiff EMA Financial, LLC's ("EMA" or "Plaintiff") motion to dismiss the counterclaims and affirmative defenses of Defendant TPT Global Tech, Inc. ("TPT" or "Defendant") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) and motion for summary judgment, pursuant to Fed. R. Civ. P. 56(a).  For the reasons explained below, Plaintiff's motion for summary judgment is GRANTED as to liability, but not as to damages; Plaintiff's motion for summary judgment is GRANTED as to recoverability of attorneys' fees; and Plaintiff's motion to dismiss the counterclaims and affirmative defenses is GRANTED.

I.      **Background**[1]

On or about June 11, 2019, TPT—a holding company for Media, Smartphone, Network, Content, and SaaS (Software as a Service) business—entered into a Securities Purchase Agreement (Doc. 1-2, "SPA") and a related securities contract (Doc. 1-1, "Note") with EMA. (Complaint ¶ 13; Am. Answer 9–10.)  The SPA purports to document EMA's purchase of a note (the "Note"), in which EMA agreed to loan TPT $250,000 with an origination discount of $15,000, plus interest on the unpaid principal at a rate of 12% per annum.  (Am. Answer 10.)  The Note also provided for "default interest" of 24% per annum on any principal or interest amounts that were past due.  (*Id.*)  Both the SPA and Note were form agreements, drafted by Plaintiff, that provided TPT little room for negotiation.  (*Id.*)  On June 11, 2019, Plaintiff funded the loan in the amount of $235,000.  (*Id.* 11.)  During the months after the Note and SPA were signed, the price per share of Defendant's stock declined from approximately $.15 per share to $.0008 per share.  (*Id.* 12.)  In February 2020, Plaintiff began its conversions.  (*Id.* 11.)  Between February and March 2020, EMA effectuated at least seven conversions, with an estimated value of $265,000.  (*Id.*)

The Note provides that EMA "shall have the right, in its sole and absolute discretion, at any time and from time to time to convert all or any part of the outstanding amount due under [the] Note into fully paid and non-assessable shares of Common Stock."  (Note § 1.1.)  The Note also provides that "Subject to Section 1.1, this Note may be converted by the Holder in whole or

---

[1] These facts are taken from Plaintiff's Complaint, (Doc. 1, "Complaint"), Defendant's Amended Answer, Affirmative Defenses, and Counterclaims, (Doc. 11, "Am. Answer"), Plaintiff's Rule 56.1 Statements of Material Facts, (Doc. 25), and the Defendant's response to Plaintiff's Rule 56.1 Statement, (Doc. 34).  Facts alleged by Defendant in its Answer are assumed to be true only for the purposes of Plaintiff's motion to dismiss.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Facts considered for the purpose of the Motion for Summary Judgment are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted.  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

in part at any time and from time to time after the Issue Date, by submitting to the Borrower a Notice of Conversion." (*Id.* § 1.4(a).)  Upon receipt of a Notice of Conversion, Defendant was required to "issue and deliver or cause to be issued and delivered to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within one (1) business day after such receipt or such an event." (*Id.* at 1.4(d).)  Defendant agreed to "at all times while [the] Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares" and was required to authorize and reserve "five (5) times the number of shares that is actually issuable upon full conversion or adjustment of" the Note. (*Id.* § 1.3.)

The Note included a default provision, which outlined what conditions would qualify as Events of Default. (*Id.* § 3.)  Examples of events of default include the Defendant failing to pay the principal or interest, failing to reserve/distribute adequate shares, or breaching the agreement's term and conditions.  (*Id.*)  Upon the occurrence of an event of default,

> the note shall become immediately due and payable and [Defendant] shall pay to the [Plaintiff] . . . an amount equal to the greater of (i) 200% times the sum of (w) the then outstanding principal amount of this Note plus (x) accrued and unpaid interest on the unpaid principal amount of this Note to the date of payment (the "Mandatory Repayment Date") plus (y) Default Interest, if any, on the amounts referred to in clauses (w) and/or (x) plus (z) any amounts owed to the Holder pursuant to Section and 1.4(g) hereof (the then outstanding principal amount of this Note to the date of payment plus the amounts referred to in clauses (x), (y) and (z) shall collectively be known as the "Default Sum") or (ii) the "parity value" of the Default Sum to be prepaid, where parity value means (a) the highest number of shares of Common Stock issuable upon conversion of or otherwise pursuant to such Default Sum in accordance with Article I, treating the Trading Day immediately preceding the Mandatory Repayment Date as the "Conversion Date" for purposes of determining the lowest applicable Conversion Price, unless the Default Event arises as a result of a breach in respect of a specific Conversion Date in which case such Conversion Date shall be the Conversion Date), multiplied by (b) the highest closing price for the Common Stock during the period beginning on the date of first occurrence of the Event of Default and ending one day prior to the Mandatory Repayment Date (the "Default Amount") and all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and the Holder shall be

3

entitled to exercise all other rights and remedies available at law or in equity. If at any time while this Note is outstanding the Borrower's Common Stock trades below $0.01, the principal amount of the Note shall automatically and without further action increase by twenty-five thousand dollars ($25,000).

(*Id*. § 3.19.)

## II.     **Procedural History**

On October 21, 2020, Plaintiff commenced this action by filing the Complaint. (Doc. 1.) On December 28, 2020, Defendant filed their Answer, Affirmative Defenses and Counterclaims, (Doc. 10), which was amended later that same day, (Doc. 11). Plaintiff filed the instant motion to dismiss Defendant's counterclaims, (Doc. 12), and accompanying memorandum, (Doc. 13, "MTD") on January 6, 2021. Defendant requested and received an extension until February 22, 2021 to file its opposition. (Docs. 15–16.) On February 19, 2021, Defendant requested another extension, which was granted on February 22, 2021, and the time to respond was extended until March 1, 2021. (Docs. 17–18.) On March 2, 2021, Defendant submitted its opposition to Plaintiff's motion to dismiss. (Doc. 19, "MTD Opp.".) On March 15, 2021, Plaintiff filed their reply. (Doc. 20, "MTD Reply.")

On March 23, 2021, Plaintiff moved for summary judgment, providing two declarations, a memorandum of law, and a Rule 56.1 Statement in support. (Docs. 21–25.) Defendant opposed the motion for summary judgment on April 30, 2021. (Doc. 31, "MSJ Opp.".) In support of its opposition, Defendant also submitted two declarations and a response to Plaintiff's Rule 56.1 Statement. (Docs. 32–34.) On May 14, 2021, Plaintiff filed a reply brief and declaration in support of its motion for summary judgment. (Docs. 35–36.)

### III.     Legal Standards

#### A.  *Summary Judgment*

Rule 56(a) grants a party the right to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Fay v. Oxford Health Plan,* 287 F.3d 96, 103 (2d Cir. 2002).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  All facts must be considered in the light most favorable to the nonmoving party.  *Sulewski v. Fed. Express Corp.,* 933 F.2d 180, 182 (2d Cir. 1991).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Along with the party's motion for summary judgment, it must also file a statement of material facts under Local Rule 56.1, and the party opposing summary judgment must file a response to the statement of material facts.  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other materials."); Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). However, "where the movant 'fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140–41 (2d Cir. 2003) (alterations omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Although the parties have not yet engaged in discovery, Plaintiff has moved for summary judgment on its claims for breach of contract and costs, expenses, and attorneys' fees. (Doc. 24.) While "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), "courts generally are reluctant to grant summary

6

judgment when the non-moving party has not had an adequate opportunity for discovery." *Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991). However, this reluctance "by no means is a prohibition on the entry of judgment," *id.,* and "[i]n appropriate circumstances, summary judgment may be granted prior to discovery." *Ali v. City of New York*, No. 11 Civ. 5469(LAK), 2012 WL 3958154, at *3 n.10 (S.D.N.Y. Sept. 5, 2012). A party seeking to avoid summary judgment before discovery has been conducted "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *see also Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); Fed. R. Civ. P. 56(d).

### B.  *Motion to Dismiss*

"In considering a motion to dismiss a counterclaim, the court applies the same standards as a motion to dismiss a complaint." *Zurich Am. Life Ins. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). The counterclaim is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

While evaluating a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the counterclaim and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007*); LOR, Inc. v. Allied World Nat'l Assurance Co.*, No. 20-CV-8187 (JPO), 2021 WL 4200642, at *2 (S.D.N.Y. Sept. 15, 2021), *reconsideration denied*, No. 20-CV-8187 (JPO), 2022 WL 2047545 (S.D.N.Y. June 7, 2022). The counterclaim need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although factual allegations contained in the counterclaim are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*; *Komlossy v. Faruqi & Faruqi, LLP*, 714 F. App'x 11, 13 (2d Cir. 2017).

### IV. Summary Judgment Discussion

#### A. *Breach of Contract*

EMA is entitled to summary judgment as a matter of law on its claim for breach of contract. "In a breach of contract action, summary judgment is appropriate 'where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning.'" *Bentivoglio v. Event Cardio Grp., Inc.,* No. 18-CV-2040 (PKC), 2021 WL 736811, at *3 (S.D.N.Y. Feb. 24, 2021) (quoting *Fulton Cogeneration Assocs. v. Niagra Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996)). The parties' agreements include provisions that call for

the application of Delaware law.  (Note § 4.6; SPA § 10(a).)  Courts in this district will typically "enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 148 (S.D.N.Y. 2017) (internal quotation marks omitted).  I find that Delaware bears a "reasonable relationship" to this dispute because Plaintiff is a Delaware corporation.  "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).[2]

Defendant does not argue that it never entered into a contractual agreement with Plaintiff and explains that it assumed contractual obligations when it "executed a securities purchase agreement and convertible note."  (Am. Answer 2.)  Nor does Defendant assert that it fully performed its contractual obligations.  Defendant admits to actions that constitute breaches of the terms of the Note and SPA including that "it did not register shares for EMA," (*Id.* 4), "did not deliver shares of stock," (*Id.*), and "did not pay the note," (*Id.*).  Instead, Defendant argues that it is not liable for their failure to perform because (1) the Note and SPA are voidable and unenforceable, (2) the Note and SPA are unconscionable, and (3) any debt due was satisfied.  (*See* MSJ Opp.)  I address each of these arguments in turn.

1. **Void and unenforceable**

Defendant devotes significant energy to explaining why there is "clearly a material factual dispute as to whether Plaintiff violated the Exchange Act by not registering as a dealer with the SEC."  (MSJ Opp. 18.)  Under Section 15 of the Exchange Act:

> [i]t shall be unlawful for any broker or dealer . . . to make use of the mails or any

---

[2] In its brief, Plaintiff identifies the elements to a breach of contract claim under New York Law, however, because both the Note and Agreement are to be interpreted under Delaware law, I will do so here.

9

means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered. . . .

15 U.S.C. § 78o(a)(1).

Defendant argues that EMA violated this provision and therefore "its agreements are void pursuant to Section 29(b) of the Securities Exchange Act." (MSJ Opp. 17.) Section 29(b) provides that:

> Every contract made in violation of any provision of this chapter [15 U.S.C. §§ 78a *et seq.*] or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter [15 U.S.C. §§ 78a *et seq.*] or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract. . . .

15 U.S.C. § 78cc(b).

There are three requirements to establish a violation of Section 29(b): "(1) the contract involved a prohibited transaction, (2) the movant is in contractual privity with the opposing party, and (3) the movant is in the class of persons the 1934 Act was designed to protect." *Found. Ventures, LLC v. F2G, LTD.*, No. 08 CIV. 10066 PKL, 2010 WL 3187294, at *6 (S.D.N.Y. Aug. 11, 2010) (cleaned up).

EMA argues that it is not a broker-dealer. I decline to determine whether or not EMA is a broker-dealer because I find that the determination would be inconsequential. The Note and SPA are valid and enforceable either way. Judge Andrew L. Carter Jr. of this District addressed these circumstances in *EMA Financial, LLC v. Vystar Corp.*, No. 119CV01545ALCGWG, 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021). In *Vystar* Judge Carter dismissed the defendant's counterclaim and affirmative defense that were based on EMA Financial being an unregistered broker-dealer. *Id.* Much like the defendant in *Vystar*, the Plaintiff here "has not indicated any

10

way in which the Agreements . . . require EMA to" register as a broker-dealer. *Id.* at *3. Several other courts have recognized that Section 29(b) only allows for the rescission of unlawful contracts. *See Cyber Apps World, Inc. v. EMA Fin., LLC,* 645 F. Supp. 3d 281, 286 (S.D.N.Y. 2022), *EMA Fin., LLC v. AppTech Corp.*, No. 21-CV-06049 (LJL), 2022 WL 4237144, at *6 (S.D.N.Y. Sept. 13, 2022); *Frati v. Saltzstein*, No. 10 CIV. 3255 (PAC), 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 207 (3d Cir. 2006) ("[U]nlawful transactions made pursuant to lawful contracts do not fall within the ambit of Section 29(b)" (cleaned up)). The Second Circuit recently interpreted a statute that tracks Section 29(b) "nearly word for word" and found that the statute "does not impose a requirement of facial or ex ante illegality." *NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 421 (2d Cir. 2023). In *NexPoint*, the Second Circuit explained that "[m]ost district courts in this Circuit have similarly interpreted § 29(b) of the . . . Exchange Act . . . to authorize rescission only when performance of the contract itself is unlawful, not merely when the conduct of a party to the contract is unlawful." *Id.* (cleaned up). Because there is no suggestion that the contracts here were unable to be legally performed, they are not subject to rescission under § 29(b). *See Frati*, 2011 WL 1002417, at *6.

### 2. Unconscionable

Defendant asserts as an affirmative defense that the parties' agreements are void because they are unconscionable. (Am. Answer 8; MSJ Opp. 19.) Courts evoke the doctrine of unconscionability doctrine with "extreme reluctance and only when all of the facts suggest a level of unfairness that is unconscionable." *Olga J. Nowak Irrevocable Tr. v. Voya Fin., Inc.*, No. CV N17C-05-254 FWW, 2020 WL 7181368, at *10 (Del. Super. Ct. Nov. 30, 2020), *aff'd*, 256 A.3d 207 (Del. 2021) (internal quotation marks omitted). To find unconscionability, "there

11

must be a showing that . . . a contract is both procedurally and substantially unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). Substantive unconscionability requires terms that unreasonably favor one party and procedural unconscionability involves an absence of meaningful choice at the time the contract was made. (*Id.* at 121–122.) If an agreement is found to be unconscionable, the court may refuse to enforce the contract in its entirety or simply sever the unconscionable clause. *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, 86 A.3d 1119 (Del. 2014).

The only support for unconscionability that Defendant offers is that "it should be sufficient evidence of the unconscionability analysis that the Plaintiff is seeking damages in excess of $650,000 on a $250,000.00 loan pursuant to which it has received in excess of $295,000.00, or the fact that default provisions have regularly been held unenforceable." (MSJ Opp. 20.) Defendant does not offer support that the value of damages a plaintiff seeks can on its own establish unconscionability. Under Delaware law, liquidated damages provisions have a presumption of validity and enforceability unless they are a penalty. *Kold, LLC v. Croman*, No. CV N13C-05-249 MMJ, 2014 WL 7008431, at *4 (Del. Super. Ct. Nov. 25, 2014). A default provision is considered a penalty when it is a "sum inserted into a contract that serves as a punishment for default, rather than a measure of compensation for its breach." *Id.* (internal quotation marks omitted). "[I]f a provision is considered a penalty, it is void as against public policy and recovery is limited to actual damages." *Del. Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006).

Under Article 3.19 of the Note, in the event of a default:

> the Note shall become immediately due and payable and the Borrower shall pay to the Holder, in full satisfaction of its obligations hereunder, an amount equal to the greater of (i) 200% times the sum of (w) the then outstanding principal amount of this Note plus (x) accrued and unpaid interest on the unpaid principal amount of

>this Note to the date of payment (the "Mandatory Repayment Date") plus (y) Default Interest, if any, on the amounts referred to in clauses (w) and/or (x) plus (z) any amounts owed to the Holder pursuant to Section and 1.4(g) hereof (the then outstanding principal amount of this Note to the date of payment plus the amounts referred to in clauses (x), (y) and (z) shall collectively be known as the "Default Sum") or (ii) the "parity value" of the Default Sum to be prepaid, where parity value means (a) the highest number of shares of Common Stock issuable upon conversion of or otherwise pursuant to such Default Sum in accordance with Article I, treating the Trading Day immediately preceding the Mandatory Repayment Date as the "Conversion Date" for purposes of determining the lowest applicable Conversion Price, unless the Default Event arises as a result of a breach in respect of a specific Conversion Date in which case such Conversion Date shall be the Conversion Date), multiplied by (b) the highest closing price for the Common Stock during the period beginning on the date of first occurrence of the Event of Default and ending one day prior to the Mandatory Repayment Date (the "Default Amount") and all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity.

(Note § 3.19.) As I found while interpreting a substantially similar liquidated damages provision in *EMA Financial, LLC v. Joey New York Inc.*, this is an invalid liquidated damages provision. No. 17-CV-9706 (VSB), 2022 WL 292920, at *14 (S.D.N.Y. Feb. 1, 2022). Other courts in this Circuit have rejected similar liquidated damages provisions. *See LG Cap. Funding, LLC v. One World Holding, Inc.*, No. 15-CV-698 (SJ)(JO), 2018 WL 3135848, at *13–14 (E.D.N.Y. June 27, 2018); *LG Cap. Funding, LLC v. MineralRite Corp.*, No. 16 Civ. 6158 (PKC) (VMS), 2017 WL 9250297, at *11 (E.D.N.Y. Dec. 1, 2017). Accordingly, the liquidated damages provision will be severed, and the remainder of the agreement will be enforced.

Defendant states that discovery must be conducted to determine whether there are bases to find that both agreements are unconscionable but does not explain what that discovery could potentially reveal. Such conclusory, speculative claims cannot themselves raise a genuine issue of material fact on summary judgment. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d. Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a

13

genuine issue of fact."); *Tulger Contracting Corp. v. Star Bldg. Sys., Inc.*, No. 01 CIV.6853(JSR), 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) (granting summary judgment where "plaintiff has failed to adduce competent evidence sufficient to make this a jury question.").

### 3. Debt was Satisfied

Defendant devotes just two sentences to its claim that their debt was satisfied. (*See* MSJ Opp. 20.) Neither of these sentences explain how this excuses Defendant's breaches. Accordingly, I consider this argument waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . .").

### B. *Costs and Attorneys' Fees*

Plaintiff also moves for summary judgment on the issue of attorneys' fees. (MSJ 9.) Delaware follows the American rule regarding attorneys' fees, meaning absent bad faith or an express agreement to the contrary, parties are responsible for their own attorneys' fees regardless of the case's outcome. *See Cont'l Fin. Co. v. ICS Corp.*, No. CV N19C-07-184 AML, 2020 WL 836608, at *5 (Del. Super. Ct. Feb. 20, 2020). However, "[i]n contract litigation, where the contract contains a fee-shifting provision, [Delaware courts] will enforce that provision." *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 352 (Del. 2013) (cleaned up). Both the Note and SPA provide that if an action is brought by either party against the other, "[t]he prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs." (Doc. Note 15; SPA 15.) Because I find that Defendant is liable to Plaintiff for breach of contract, Plaintiff's motion for summary judgment on the fourth claim for relief for costs, expenses, and fees incurred related to their breach of contract claim is granted, with the amount to be determined at a later time.

### C. *Damages and Interest*

"While the amount of damages is unclear at this point, [Plaintiff] has presented evidence of damage, and the assessment of damages requires factfinding that can only take place at trial." *MTV Networks v. NVE Pharm.*, No. 01-CV-1699, 2002 WL 1203853, *6 (S.D.N.Y. June 3, 2002). Accordingly, Plaintiff's motion for summary judgment is granted with respect to liability but denied as to damages. *See TNT USA Inc. v. DHL Exp. (USA), Inc.*, No. 09-CV-481, 2012 WL 601452, at *5 (E.D.N.Y. Feb. 23, 2012); *4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 244–48 (S.D.N.Y. 2011).

Although the jury will determine damages, the rate of prejudgment interest may be determined independently from the jury as a matter of law. *See de Kwiatkowski v. Bear, Stearns & Co.*, No. 96CIV.4798(VM), 2000 WL 729118, at *5 (S.D.N.Y. June 6, 2000). Prejudgment interest begins at the "earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." CPLR 5001(b). Typically, when a contract establishes a default interest rate, that rate will be used to determine prejudgment interest. *See Parallax Health Scis., Inc. v. EMA Fin., LLC,* 2022 WL 2442338, at *13 (S.D.N.Y. June 13, 2022), *report and recommendation adopted*, 2022 WL 2354546 (S.D.N.Y. June 30, 2022); *Bridev One, LLC v. Regency Ctrs., L.P.*, 2017 WL 3189230, at *5 (Del. Super. Ct. July 20, 2017) ("Pre-judgment interest is awarded as a matter of right, an express contract rate of interest will be set as the default rate.") However, the parties' right to set a contractual interest rate is "subject to state usury laws." *C.A., Inc. v. Network Sols. Provider, Inc.*, No. 17-CV-3623, 2018 WL 6834472, at *2 n.2 (E.D.N.Y. Dec. 28, 2018). Delaware's usury law provides that "[a]ny lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any

15

surcharge thereon" but "there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower." DEL. CODE ANN. tit. 6, § 2301 (West). Because the amount loaned exceeds $100,000 and there is no evidence that repayment was secured by a mortgage, the Delaware statute does not establish a maximum allowable interest rate. Since the contractual interest rate is not statutorily usurious, it will be honored. Accordingly, prejudgment interest will be applied at the contractual Default Rate of 24%.

### V. Motion to Dismiss Discussion

#### A. *First Counterclaim*

Defendant's first counterclaim seeks declaratory judgment that Plaintiff violated Section 15(a)(1) of the Exchange Act and as a result the agreements are void and/or rescinded. (Am. Answer 15.) Plaintiff argues that this counterclaim must be dismissed because Section 15(a)(1) does not provide for a private right of action. (MTD 7.) Plaintiff is correct; Section 15(a)(1) provides no private right of action. *See Vystar Corp.,* 2021 WL 5998411, at *3. Plaintiff brings this counterclaim pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. The DJA provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The DJA does not create an independent cause of action, but instead is a mechanism that provides a substantive claim with a form of relief that was previously unavailable. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).

16

Because Section 15(a)(1) of the Exchange Act does not provide a private right of action, as a matter of law, Defendant's request for a declaration stating Plaintiff violated Section 15(a)(1) must be rejected. Further, as explained *supra* in Section IV(A)(1), I have already found that the agreements should not be declared void or rescinded pursuant to the Exchange Act. Accordingly, I dismiss Defendant's first counterclaim.

### B. *Second Counterclaim*

Defendant's second counterclaim seeks declaratory judgment that (1) the underlying agreements (or portions thereof) are unconscionable and unenforceable, and (2) the legal fee provisions of the agreements are mutual. (Am. Answer 17–18.) Plaintiff argues that (1) declaratory judgment is not an independent cause of action, (2) unconscionability is not a cause of action, (3) Defendant does not properly plead unconscionability, and (4) the attorneys fee provision is clear on its face. (MTD 14–16.)

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The appropriateness of relief is within the district court's discretion. *See Jenkins v. United States*, 386 F.3d 415, 417 (2d Cir. 2004); *see also Wilton v. Seven Falls, Co.*, 515 U.S. 277, 287 (1995) (explaining that the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant" (quoting *Public Serv. Comm'n of Utah v. Wykoff Co.*, 344 U.S. 237, 241 (1952))). "The Second Circuit has provided two factors to help district courts properly exercise the broad discretion conferred by the Declaratory Judgment Act: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and

afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Dish Network, L.L.C. v. Am. Broad. Cos.*, No. 12 CIV. 4155 LTS KNF, 2012 WL 2719161, at *3 (S.D.N.Y. July 9, 2012) (cleaned up).  In making this decision, a district court may consider "equitable, prudential, and policy arguments."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007).

I find that resolution of Plaintiff's breach of contract claim necessarily will settle the related issues for which Defendant seeks declaratory relief.  Accordingly, Defendant's second counterclaim is dismissed.

Even if I did not find that the legal issues are resolved through Plaintiff's breach of contract action, Defendant fails to state a claim upon which relief can be granted under the DJA.  The only example of unconscionability that Plaintiff provides is that "the attorneys' fees section of the agreements . . . provide only for EMA to secure attorneys' fees, but not TPT."  (Am. Answer 18.)  This is not correct.  Both the Note and SPA state that if an action is brought by either party against the other, "[t]he prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs."  (Note 15; SPA 15.)  Because Defendant does not properly plead its second counterclaim, dismissal is also warranted on this basis.

    **C.  Third Counterclaim**

Defendant's third counterclaim is for unjust enrichment.  (Am. Answer 19.)  Plaintiff asserts that unjust enrichment is precluded as a matter of law because the parties have two enforceable contracts.  (MTD 16.)  Defendant does not respond to this argument.  Under Delaware law, unjust enrichment is a quasi-contract claim only available when the parties do not have an express, enforceable contract.  *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 891 (Del.Ch. 2009); *McBeth v. Porges*, 171 F. Supp. 3d 216, 231 (S.D.N.Y. 2016); *Tolliver v.*

*Christina Sch. Dist.,* 564 F. Supp. 2d 312, 315 (D. Del. 2008). Because the parties have two express, enforceable contracts, Defendant's counterclaim for unjust enrichment is hereby dismissed.

### D. *Fourth Counterclaim*

Defendant's fourth counterclaim is for attorneys' fees. (Am. Answer 19–20.) Plaintiff states "there is no provision that calls for the award of attorneys' fees to defendant for any reason." (MTD 22.) This is not correct. As explained *supra,* both the Note and SPA provide that if an action is brought by either party against the other, "[t]he prevailing party shall be entitled to recover from the other party its reasonable attorney's fees and costs." (Note 15; SPA 15.) Plaintiff acknowledges this in their reply memorandum in support of their motion to dismiss. (MTD Reply 7.) Because I find that Defendant is liable to Plaintiff for breach of contract, Defendant's counterclaim for attorneys' fees is dismissed.

### E. *Affirmative Defenses*

Plaintiff also requests that I strike each of the Plaintiff's eight affirmative defenses "as conclusory, factually unsupported and/or unsubstantiated, or inadequately plead." (MTD 17.) Defendant raised at least eight affirmative defenses in its Answer but waived several of them by failing to raise them in opposition to Plaintiff's motion for summary judgment. *See Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) (deeming argument waived when Plaintiff did not raise them in opposition to a motion for summary judgment); *Wilmington Tr., Nat'l Ass'n as Tr. for Registered Holders of Wells Fargo Com. Mortg. Tr. 2015-NXS2, Com. Mortg. Pass-Through Certificates, Series 2015-NXS2 v. Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK), 2022 WL 2657166, at *7 (S.D.N.Y. July 8, 2022) ("[T]he Answering Defendants waived those affirmative defenses by not raising them in opposition to the plaintiff's motion for

summary judgment."). Accordingly, I do not consider whether Plaintiff's claims are usurious or barred by the doctrines of unclean hands, waiver, estoppel, or satisfaction and accord. (*See* Am. Answer 8–9.)

For the reasons explained *supra*, Defendant's affirmative defenses related to Plaintiff acting as an unregistered broker/dealer, the parties' liquidated damages provision, Plaintiff's receipt of repayment of the amount due, and unconscionability are dismissed. I also find that Plaintiff has set forth a claim upon which relief can be granted. Because I am not making a finding as to the amount of damages, I need not determine whether "the relief Plaintiff seeks are exorbitant." (*Id.* 9.)

### VI.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED as to liability, but not as to damages; Plaintiff's motion for summary judgment is GRANTED as to recoverability of attorneys' fees; and Plaintiff's motion to dismiss the counterclaims and affirmative defenses is GRANTED as to all of Defendant's counterclaims and affirmative defenses except the defense that the relief Plaintiff seeks is exorbitant, which I decline to rule on at this time. The Clerk of the Court is respectfully directed to terminate the gavels pending at Docs. 12 and 21.

SO ORDERED.

Dated: October 26, 2023
       New York, New York

                                          Vernon S. Broderick
                                          United States District Judge